[No. 46171. En Banc. December 11, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. GLYNN T. PRICE, ET AL, *Appellants.*

*Bill Tobin,* for appellants.

*C. Danny Clem, Prosecuting Attorney,* and *Christian C. Casad, Deputy,* for respondent.

BRACHTENBACH, J.—Defendants are an individual, Glynn T. Price, and two corporations wholly owned by him, John Brojac Fish Company and Dewatto Fish Company. Defendants are commercial fish buyers. They were charged with statutory and regulatory violations involving commercial fish receiving tickets.

Thirty–five counts were charged. Some counts charged a single defendant, others multiple defendants. Price was charged in 13 counts, Brojac in 35 counts, and Dewatto in 9 counts.

The charges were: 8 counts of having knowingly procured or offered a false or forged instrument, a steelhead receiving ticket, in violation of RCW 40.16.030 (venue was changed on 4 counts); 14 counts of having failed to distribute copies of cannery fish receiving tickets, contrary to WAC 220–69–260[1] and RCW 75.08.080; 4 counts of having failed to return the International Pacific Salmon Fisheries Commission copies of treaty Indian fish receiving tickets, contrary to WAC 220–69–264[1] and RCW 75.08.080 (dismissed); 3 counts of having failed to return tribal copies of treaty Indian fish receiving tickets, contrary to WAC 220–69–264 and RCW 75.08.080; 1 count of having failed to use a mechanical imprinter, contrary to WAC 220–69–273 and RCW 75.08.080 (dismissed); 2 counts of conspiracy to violate RCW 40.16.030; and 3 counts of theft, contrary to RCW 9A.56.020–.040.

Collectively the defendants were convicted on 22 counts. We affirm.

The Department of Fisheries has promulgated comprehensive regulations requiring filing of fish receiving tickets for food fish and shellfish. WAC 220–69. We are concerned here with the cannery fish receiving tickets for "nontreaty," WAC 220–69–220(5), (6), salmon caught in inland waters, WAC 220–69–230,[1] and treaty Indian fish receiving tickets

---

[1]These regulations have recently been slightly amended. Wash. Reg. § 80.05.093.

used for deliveries of fish caught by treaty Indians exercising a treaty fishing right in established treaty waters. WAC 220–69–234.[1]

Steelhead are classified as game fish and come under the jurisdiction of the Department of Game. RCW 77.08.020. Neither counsel cites any statute or regulation requiring or governing steelhead tickets, but it appears that WAC 232–12–211 to –212 are applicable. We are not cited to any statute within the game code nor any regulations providing penalties for ticket violations. This appears to be the reason the State relies upon RCW 40.16.030 for charges on the steelhead tickets.

Defendants raise four issues: (1) Were defendants denied a speedy trial required by CrR 3.3? (2) Should the court have changed venue to another county on three of the charges? (3) Were the defendants denied equal protection on certain counts by prosecutorial discrimination? (4) Do steelhead fish receiving tickets constitute "instruments" under RCW 40.16.030?

Defendants contend they were denied a speedy trial. A trial date of November 6, 1978, had been set. On that date defendants moved that the case be dismissed because the 90–day speedy trial period specified by CrR 3.3 as it then existed had expired. *See* 87 Wn.2d 1102 (prior version of CrR 3.3). The court immediately denied this motion. On this same day defendants sought discretionary review of this decision by the Court of Appeals. After review was denied, defendants expressly waived their right to a speedy trial except as it may have been violated prior to their motion. Trial actually began on January 29, 1979.

■ The threshold question is whether the speedy trial period began to run on the date the information was filed, July 12, 1978, or the date of arraignment, July 24, 1978. Filing of the information commences the period only if "there is an inordinate unjustifiable delay in scheduling the preliminary appearance". *State v. Alexus*, 91 Wn.2d 492, 495, 588 P.2d 1171 (1979). Such a delay was clearly absent in this case, since it arose because defense counsel

requested that a summons, rather than a warrant, be issued. Defendants' reliance on *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976), is accordingly misplaced.

Although the period commenced upon the date of arraignment, the length of time between this date and defendants' attempt to obtain discretionary review surpassed CrR 3.3's 90–day period by 15 days. Unless 15 or more days were properly excluded from calculation, CrR 3.3 was violated.

On October 13, 1978, defendants moved to obtain handwriting exemplars from Chris Stoess, a State witness. The court granted this motion and continued the case until the exemplars were received. Defendants received the exemplars 18 days after their request.

▮ Ordinarily there would be no question that this 18–day period would be excluded from calculation, since defendants requested the continuance. *See* CrR 3.3(e)(1). Defendants contend, however, that this period should not be excluded because they were compelled to make this motion when the State filed an amended information on October 6, 1978, which interjected new facts into the case. Defendants argue that if the State had acted with due diligence, this information would have been brought to light sooner, thereby making their request for a continuance unnecessary. We agree that if the State inexcusably fails to act with due diligence, and material facts are thereby not disclosed to defendant until shortly before a crucial stage in the litigation process, it is possible either a defendant's right to a speedy trial, or his right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense, may be impermissibly prejudiced. Such unexcused conduct by the State cannot force a defendant to choose between these rights. The defendant, however, must prove by a preponderance of the evidence that interjection of new facts into the case when the State has not acted with due diligence will compel him to choose between prejudicing either of these rights.

Defendants are unable to shoulder this burden of proof. The amended information added charges of theft of salmon from John Kodiak, Chris Stoess, John Holmes, and Russell Plancich. Kodiak and Stoess had contacted the prosecution only a short time before the amended information was filed. Defendants' attempt to prove lack of due diligence consists of citation to several references in the record to Kodiak which occurred prior to the amendment of the information. Stoess, Holmes and Plancich were not mentioned. The references to Kodiak were unrelated to any thefts. The record in this case does not even remotely suggest an absence of due diligence by the State in filing the amended information. The 18–day period was therefore properly excluded from calculation. Defendants' rights to a speedy trial were therefore not violated.

Second, defendants argue that venue for three of the counts involving steelhead receiving tickets should have been changed from Kitsap County to Jefferson County. When the information was filed in Kitsap County, the State had proof that one of four steelhead receiving tickets had been forged in Kitsap County. That county was the residence of Price and the headquarters of his corporations. The State did not know where the other three violations had occurred. The State asserts it reasonably believed they had taken place in Kitsap County.

On November 6, 1978, defendants' attorney received a witness statement of an employee of defendants stating that he had forged tickets in Jefferson County at Price's direction. Not until the trial began on January 29, 1979, did defendants move for a change of venue. The court ruled that defendants had waived the right to a change of venue.

CrR 5.1(b) provides that where there is a reasonable doubt whether an offense has been committed in one of two or more counties, the action may be commenced in any such county. CrR 5.1(c) grants the defendant the right to a change of venue to the proper county when the case is filed under subsection (b), but requires that "any objection to venue must be made as soon after the initial pleading is

filed as the defendant has knowledge upon which to make it."

Defendants knew on November 6, 1978, that the State's main witness on the three counts placed his actions in Jefferson County. Yet defendants waited almost 3 months to raise the venue issue, at the very time the trial was to start. When the State filed its information containing these charges, it had a reasonable belief that the offenses had been committed in Kitsap County. Defendants were required to object promptly to venue once they had received information indicating venue would lie in Jefferson County. Their long and unexplained failure to do so plainly violated the expeditious objection requirement of CrR 5.1(c). The trial court therefore properly ruled that any objection to venue had been waived by this delay.

Third, defendants contend the criminal action brought against them for failing to return the tribal copies of Indian fish receiving tickets, see WAC 220–69–264, constituted discriminatory enforcement of the law in violation of the equal protection clause.

Defendants obtained a computer printout from the Department of Fisheries showing roughly 18,000 errors or omissions in such fish tickets over a 3–year period. Presumably these were at least technical violations. Only seven prosecutions had been filed prior to this case. It was the policy of the Department of Fisheries to attempt to obtain voluntary compliance rather than prosecute. The Department gave more scrutiny to intentional violations. Defendant Price was identified as one of five major violators out of approximately 600 licensees. None of the other major violators was in Kitsap County. Price had been notified of his irregularities.

Defendants, who cite no Washington cases, are unable to satisfy the standard for proving impermissible discriminatory prosecution. It is not sufficient that the prosecutor did not proceed against others who might be equally guilty. Prosecutorial discretion must necessarily be broad, and defendants were required to prove "that the

prosecutor's conduct in this matter was without reasonable justification and constituted intentional or purposeful systematic discrimination in the enforcement of the law." *State v. Jacobsen,* 78 Wn.2d 491, 499, 477 P.2d 1 (1970). This standard was not violated by prosecution of an egregious, intentional violator who had been notified of his noncompliance with the law.

Fourth, defendants were charged with violating RCW 40.16.030 which provides:

> Every person who shall knowingly procure or offer any false or forged instrument to be filed, registered or recorded in any public office, which instrument, if genuine, might be filed, registered or recorded in such office under any law of this state or of the United States, shall be punished by imprisonment in the state penitentiary for not more than five years, or by a fine of not more than five thousand dollars, or by both.

They argue that a steelhead receiving ticket is not an "instrument" within the meaning of this statute.

No Washington case has construed RCW 40.16.030. Other jurisdictions, interpreting identical or similar statutes, have reached conflicting results. The leading California decision held that the word "instrument" is limited to a meaning similar to that as used in other sections of their code. This decision examined judicial interpretations of the word and concluded:

> Generally the term "instrument" as applied to documents necessarily imports a paper writing; but every paper writing is not necessarily an instrument within the settled statutory meaning of the term. With reference to writings the term "instrument" as employed in our statutes has been defined to mean an agreement expressed in writing, signed, and delivered by one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty.

*People v. Fraser,* 23 Cal. App. 82, 84–85, 137 P. 276 (1913). *See People v. Fox,* 73 Cal. App. 3d 178, 140 Cal. Rptr. 615 (1977); *People v. Olf,* 195 Cal. App. 2d 97, 15 Cal. Rptr. 390 (1961).

In contrast, Arizona Supreme Court has adopted a much broader view, for it has delineated the breadth of its statute by examining its purpose, which it found to be the right of the public to rely upon information from instruments required or permitted to be filed, registered or recorded. The court held that if the state government required or permitted filing, registration or recording of a document, it was thereby sufficiently important to be included within the statute. *Lewis v. State,* 32 Ariz. 182, 188, 256 P. 1048 (1927).

■ We are not persuaded by either the California or Arizona analysis. The word "instrument" is used in many different contexts in statutes. The variety of circumstances in which it is used belies any uniform definition applicable to all statutes. We find no guidance in interpretation from a statute–by–statute examination to ascertain a universal meaning. On the other hand, we do not believe the legislature intended the substantial penalties of the statute to be universally applicable whenever a piece of paper may be filed in a public office.

We agree with the approach of the New York court in interpreting a somewhat similar statute.[2]

> To begin with, the term instrument is not one susceptible to an exact, precise and inelastic definition. It is employed in many different contexts in our law and its meaning shifts, sometimes subtly, sometimes not, depending on the context. . . . While in all cases the term serves to identify a class of paper writings, the type of document sought to be included in, or for that matter excluded from, the scope of a particular statutory enactment varies with the purpose that enactment seeks to serve. . . .
> . . .

---

[2] "A person is guilty of offering a false instrument for filing . . . when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision thereof, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant." N.Y. Penal Law § 175.35. (McKinney).

When a claim is made that a particular document is not an instrument within the meaning of the statutory prohibition, the character and contents of the document must be closely analyzed. The court must not only ascertain whether the particular document falls within the literal scope of the statute but also whether the document is of a character that the mischief the statute seeks to prevent would ensue if the document were filed. Where both standards are satisfied, the document, of course, is an instrument as that term is utilized in this statute.

*People v. Bel Air Equip. Corp.*, 39 N.Y.2d 48, 54–55, 346 N.E.2d 529, 382 N.Y.S.2d 728 (1976).

With that background, we determine that the legislature intended that RCW 40.16.030 encompass a document which is required or permitted by statute or valid regulation to be filed, registered, or recorded in a public office if (1) the claimed falsity relates to a material fact represented in the instrument; and (2a) the information contained in the document is of such a nature that the government is required or permitted by law, statute or valid regulation to act in reliance thereon; or (2b) the information contained in the document materially affects significant rights or duties of third persons, when this effect is reasonably contemplated by the express or implied intent of the statute or valid regulation which requires the filing, registration, or recording of the document.

█ Steelhead receiving tickets must be transmitted daily to the Department of Game. WAC 232–12–212(2)(a), (b). The contents of these tickets were materially false in representing that the steelhead were caught by treaty Indians. They were forged by affixing the purported signature of the treaty Indians who supposedly caught them. The government necessarily relied and acted upon that information in its management of steelhead runs and in allocating fish between treaty Indians and non–Indians. Falsification of steelhead receiving tickets materially affects substantial rights of treaty Indian tribes and individual

Indian fishermen. The record indicates that steelhead tickets are used to record steelhead catches by Indian fishermen, and falsification of such tickets can adversely affect the allocation of steelhead to treaty Indian tribes. The rights of the individual Indians whose names were forged were materially affected, since the tribes assess a tax against those individuals based upon the catch reported in the tickets. The above requirements were clearly proven by the State, and defendants therefore violated RCW 40.16-.030.

All of defendants' assignments of error are meritless. Affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.