[Nos. 36171-0-II; 36181-7-II.   Division Two.   March 24, 2009.]

THE STATE OF WASHINGTON, *Appellant*, v. NATALIE RENEE BROOKS, *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. JASON BROOKS, *Respondent*.

374

*Jeremy R. Randolph, Prosecuting Attorney,* and *J. Bradley Meagher, Lori E. Smith,* and *Liam M. Golden, Deputies,* for appellant.

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for respondents.

¶1 BRIDGEWATER, J. — The State of Washington appeals the Lewis County Superior Court's decision granting Natalie Renee Brooks's and Jason Brooks's motions to dismiss their respective charges of first degree burglary,

first degree robbery, and theft of a firearm due to governmental mismanagement and discovery violations under CrR 8.3. We hold that the trial court did not abuse its discretion because the State failed: to provide a 60-page victim's statement until the day before trial; to provide Jason Brooks's statement to a deputy from the night of the incident; to provide the lead detective's report, which likely would have revealed other witnesses that Natalie and Jason needed to interview; and to subpoena the victim for trial. The trial court tried to force compliance by granting continuances as an alternative to dismissal, but its offers to extend time were not effective, nor was there any assurance that the State would have provided the discovery even if the trial court offered it other alternatives. We hold that the State should have suggested alternatives if it felt that it needed more time and that it did not do so. The governmental mismanagement in this case materially destroyed Jason's and Natalie's ability to obtain a fair trial. The trial court did not abuse its discretion by ordering dismissal based on the extraordinary facts of this case. We affirm.

## FACTS

¶2 On December 27, 2006, Billy Elkins knocked on Gary Greig's door and said that he wanted to repay a debt that he owed to Greig. Elkins told Greig that he could select a sword from Elkins's sword collection to satisfy the debt. Jason,[1] Natalie, and a person named Candace accompanied Elkins to Greig's house, apparently with the intention of robbing Greig. The plan required Jason, Natalie, and Elkins to distract Greig while Candace stole various items from other parts of Greig's house. They would also attempt to sell items to Greig so that they could use the money to buy methamphetamine.

¶3 When Jason, Natalie, and Elkins left Greig's residence, Greig noticed that someone had moved a radio and

---

[1] This appeal consolidated two related cases and thus, two trial records, one for each of the respondents. We refer to the respondents by their first names without intending any disrespect.

tampered with his safe. Greig took a rifle and confronted the three near their vehicle. He found three of his crossbows and a pair of his binoculars in the vehicle. Candace appeared and a gunfight ensued, resulting in the deaths of Elkins and Candace, along with injuries to Greig.

¶4 The State charged Jason and Natalie with first degree burglary, first degree robbery, and theft of a firearm. The trial court arraigned Jason and Natalie on January 2, 2007, and established the speedy trial deadline[2] as March 2, 2007. The trial court set Jason's trial for the week of February 19, 2007, with an omnibus hearing set for February 1 and trial confirmation set for February 15. It set Natalie's trial for the week of February 12, with an omnibus hearing set for January 25 and trial confirmation set for February 8.

¶5 At Natalie's omnibus hearing on January 25, the State asked for a one-week continuance because it had just received some discovery. Natalie's counsel indicated that the only discovery he had received up to that point was the probable cause statement. The trial court continued Natalie's omnibus hearing to February 1.

¶6 On February 1, the trial court again called Natalie's omnibus hearing. Natalie's counsel indicated that he had received new discovery from the State the previous day and that the State provided its first round of discovery the previous Friday. The trial court continued Natalie's omnibus hearing to February 8, to allow the State time to provide the defense with additional discovery.

¶7 On February 8, the trial court completed Natalie's omnibus hearing. Her counsel indicated that he received "six more inches of discovery Friday afternoon." Verbatim Report of Proceedings (VRP) (Natalie) (Feb. 8, 2007) at 12. The trial court recognized that it could continue Natalie's trial without violating her speedy trial rights, so it reset her

---

[2] CrR 3.3(b)(1)(i) provides, "A defendant who is detained in jail shall be brought to trial within . . . 60 days after the commencement date." CrR 3.3(h) requires dismissal with prejudice if the trial does not begin within the 60 days. CrR 3.3 provides exceptions and a cure period for this rule.

trial date to the week of February 19, with trial confirmation set for February 15.

¶8 The trial court held Jason's omnibus hearing on February 8. On February 15, the trial court confirmed that Jason's trial would begin the following week and also confirmed Natalie's trial date. Both trials would occur during the week of February 19. At Natalie's confirmation hearing, counsel indicated that he had just received the State's witness list for the witnesses the State planned to call during a scheduled CrR 3.5[3] hearing. The trial court moved back the CrR 3.5 hearing to the same day as Jason's CrR 3.5 hearing so that both Natalie's and Jason's counsel could review the witness list.

¶9 During Jason's CrR 3.5 hearing, which occurred the morning of the first scheduled trial date, his counsel indicated that the State had provided him with over 138 pages of new discovery, including a statement to police that Jason made on December 27, 2006, the day of the incident. Jason's counsel stated that the State told him two weeks earlier that it knew that he did not have this statement and that the State would get it to him soon. Jason's counsel also received additional police reports, one of which indicated that Jason made two additional taped statements that neither his nor Natalie's counsel knew about because the deputy did not mention them in his initial report. The State had not provided those two taped statements. The new discovery the State provided included taped statements from nine individuals, each of which the officers recorded between January 3 and January 10.

¶10 In addition to Jason's two taped statements, Jason's counsel indicated that he had not received an hour-long tape of Greig, the alleged victim, which police taped on December 27, 2006, the day of the incident. Jason's counsel testified that when he interviewed Greig, Greig provided statements that were inconsistent with an earlier state-

---

[3] CrR 3.5 provides that when a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing for the purpose of determining whether the statement is admissible.

ment that he gave to police the day after the incident. Accordingly, he argued that he needed Greig's statements from the day of the incident to determine consistency before he could examine Greig at a CrR 3.5 hearing. Further, he stated that he had not received at least three diagrams described in the various police reports. Jason's defense counsel indicated that he had spoken with the prosecutors assigned to this case many times to request additional discovery.

¶11 Accordingly, Jason requested a dismissal under CrR 4.7(h)(7) based on the State's failure to provide discovery. The State first countered that the defense should not be surprised by what the taped statements contained because the officers' reports contained summaries of the taped statements. The trial court corrected the State that CrR 4.7(a)(1)(ii) requires the State to provide the statement as opposed to a summary of the statement.

¶12 The State next contended that time remained before the speedy trial deadline expired and, thus, the proper remedy was to continue the trial so that defense counsel could review the discovery and prepare his argument. When the trial court asked the State what was happening with the discovery problems in this case, the State responded, "I honestly can't tell the court." VRP (Natalie & Jason) (Feb. 20, 2007) at 13. When the trial court asked specifically about Greig's December 27, 2006 taped statement, the State responded that it did not yet have the Greig statement because the police had not yet transcribed it. The trial court next asked about the State's delay in providing its witness list on the morning of trial. The deputy prosecutor responded that when he took over Jason's case, the first thing he did was to check for a witness list and, when he did not see one, he asked another deputy prosecutor to prepare one.

¶13 The trial court considered the speedy trial deadline, noting that there is a cure period or a possible extension beyond the speedy trial date if necessary. The trial court sanctioned the State under CrR 4.7(h) and granted a

continuance, moving the trial to March 2, the last day of his speedy trial window. The trial court also allowed Jason to file a motion to dismiss under CrR 8.3 based on governmental misconduct, which it scheduled for the morning of March 1.

¶14 The trial court then addressed the discovery issues in Natalie's case. Natalie's counsel noted similar discovery problems, but he indicated that he had not yet received the new stack of discovery that the State left in his assigned in-box at the prosecutor's office because defense attorneys do not have access to their in-boxes unless the office is open. Natalie incorporated all of Jason's arguments. Her counsel pointed out that the trial court had already continued her case once for discovery issues. Natalie's counsel noted that he was still missing 11 taped statements, three sketches, and the Greig statement. Natalie's counsel then asked for a dismissal based on governmental mismanagement, arguing that Natalie was forced to choose between effective assistance of counsel and her right to a speedy trial. The trial court continued Natalie's trial to March 2, the last day of her speedy trial window, and scheduled a motion hearing for the morning of March 1 to consider Natalie's CrR 8.3 motion to dismiss.

¶15 On March 1, 2007, the trial court heard both Natalie's and Jason's motions to dismiss. Natalie's counsel informed the trial court that the State did not provide the first discovery in this case until after the first omnibus hearing. He agreed to a continuance so the State could provide the missing discovery. Even when the trial court continued the trial a second time to allow the State to provide discovery, the State failed to complete discovery before the first day of trial. Natalie's counsel informed the trial court that Jason's missing statements were apparently not available because of some type of tape recorder malfunction; that Deputy Smith still had not filed his report even though he told Jason's counsel that he was working on a report but had not yet finished it; and that the State had taken nine additional days from the time they received several

statements taken by Officer Callas to the time the State provided them to defense counsel. Natalie's counsel did not receive the statements that Officer Callas took until after the first trial date. The State took eight days to produce Greig's December 27, 2006 statement for the defense even though the police transcribed it on February 12. Natalie's counsel received 138 pages of discovery on one of the trial dates, including 12 taped statements from potential witnesses. He did not receive the State's witness list until the day of trial. Finally, the trial court noted that the State did not even subpoena Greig for the day of trial.

¶16 Jason's counsel adopted Natalie's argument. In addition, he added that Greig's December 27, 2006 statement, which Jason's counsel received after the trial court continued the case on February 20, indicated that Greig gave the detective a diagram on December 27, 2006, but that the State had yet to provide it. Jason's counsel told the trial court that he still needed to interview the witnesses disclosed in the additional discovery the State provided on the February 20, 2007 trial date. When the trial court asked why Jason's counsel had not interviewed these witnesses between February 20, and the current date, his counsel stated that he had been writing the brief asking the trial court to dismiss the case. He also stated that he spoke with Deputy Smith and the prosecutor's office about Deputy Smith's report, but he was unable to efficiently interview Deputy Smith because he did not know what was in Deputy Smith's report. Both defense attorneys clarified that their clients were being forced to choose between effective representation and their speedy trial rights.[4]

¶17 The State argued that, based on the chart that the deputy prosecutor created showing the times that the State provided discovery, the delays were not long enough to constitute mismanagement. When the trial court pressed the prosecutor about why the State did not provide the discovery in a timely manner, he responded:

---

[4] It appears that the earliest the trial court could continue the case, based on scheduling issues indicated in the record, was to April.

The only answer I have for the court is this: There are a grand total of two persons downstairs in the sheriff's office transcribing statements. When the court looks at the volume of what is here and the dates it was investigated versus when the dates it was received by our office, a lot of that lag has to do with the fact of just the sheer volume that had to be transcribed.

. . . .

And secondly, if the court will recall the sheriff's office was also engaged in cleanup and ancillary matters regarding the floods that occurred right around Christmastime, the date of the incidents in this particular case being December 27th.

And lastly, there is the time lag that I suppose counsel hits on the most and that is the one on page five of our grid which shows a nine-day delay between the date our office received an item and it was provided to defense counsel. I would simply note that that was--actually the date received was the last day that Mr. Anderson left and there was a three-day weekend in between there, so when I say nine days, that's total days, but in terms of business days it's only six.

VRP (Natalie & Jason) (Mar. 1, 2007) at 36-38.

¶18 The trial court noted that its biggest concern was not the time it took the prosecutor to deliver the discovery once it obtained it, but rather

what happened between December 27th, which is the date of these alleged offenses, and the receipt by the prosecutor's office which in some cases was a month and a half later or almost a month and a half later. Apparently there are some out there that still hasn't [sic] been delivered.

VRP (Natalie & Jason) (Mar. 1, 2007) at 38-39.

¶19 Specifically, the trial court referenced the Greig statement, which the officer taped on December 27, 2006 but did not transcribe until February 12, and which reached defense counsel after the February 20 continuance. The trial court asked how defense counsel would be able to effectively interview Greig without his initial statement. Specifically, it asked how defense counsel could cross-examine Greig if counsel received a 60- or 70-page state-

ment the day before trial. The trial court then asked the State to walk through the State's CrR 4.7 obligations. The trial court did not feel that the State satisfied these obligations.

¶20 The trial court next asked both defense counsel what new facts came to light as a result of the late discovery. Natalie's counsel responded that he now knew the identity of the witnesses but that he could not provide an additional answer because he still did not have all the discovery. He stated that the discovery he received the day of trial revealed Greig's inconsistent statements. Jason's counsel stated the same. The trial court expressed its reluctance but then granted the motions to dismiss with prejudice. The trial court found governmental misconduct and prejudice under CrR 8.3(b). The trial court then entered five pages of written findings and conclusions consistent with its oral ruling. The State appeals.

## ANALYSIS

### I. CrR 8.3(b) Motions To Dismiss

¶21 The State contends that the trial court abused its discretion by granting Jason and Natalie's CrR 8.3(b) motions to dismiss because (1) the sheriff's office had possession and control of much of the missing or tardy discovery, (2) Jason and Natalie failed to prove prejudice by showing that the interjection of new facts forced them to choose between effective assistance or speedy trial rights, and (3) the trial court failed to address whether the late-received discovery was material.

¶22 The trial court dismissed the cases under CrR 8.3(b) with reference to the State's violations of CrR 4.7(a). CrR 8.3(b) provides:

> **On Motion of Court.** The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially

affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

¶23 Dismissal under CrR 8.3(b) requires a showing of arbitrary action or governmental misconduct, but the governmental misconduct need not be of an evil or dishonest nature; simple mismanagement is enough. *State v. Dailey*, 93 Wn.2d 454, 457, 610 P.2d 357 (1980). It also requires the defendant to show that such action prejudiced his right to a fair trial. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). "Such prejudice includes the right to a speedy trial and the 'right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense.'" *Michielli*, 132 Wn.2d at 240 (quoting *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980)). But dismissal under CrR 8.3 is an extraordinary remedy, one that the trial court should use only as a last resort. *State v. Wilson*, 149 Wn.2d 1, 12, 65 P.3d 657 (2003).

¶24 We review a trial court's decision on a motion to dismiss for an abuse of discretion. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). A trial court abuses its discretion when its decision is manifestly unreasonable, when it exercises its decision on untenable grounds, or when it makes its decision for untenable reasons. *Blackwell*, 120 Wn.2d at 830.

¶25 The State contends that it did not have control or possession over much of the missing or tardy discovery and, accordingly, it did not mismanage the case. The State cites *Blackwell*, where our Supreme Court held that the prosecutor's actions were reasonable when the prosecutor attempted to obtain the requested documents and asked the trial court to issue a subpoena duces tecum when he was unable to obtain them under CrR 4.7(d).[5] *Blackwell*, 120 Wn.2d at 832.

---

[5] CrR 4.7(d) describes material held by others:

Upon defendant's request and designation of material or information in the knowledge, possession or control of other persons which would be discoverable if in the knowledge, possession or control of the prosecuting attorney, the prosecuting attorney shall attempt to cause such material or information to be

¶26 But *Blackwell* is easily distinguishable from the facts in this case based on the prosecutor's attempts to procure the requested information. *Blackwell* involved a defendant's request for the arresting police officers' personnel files and service records when defense counsel believed that the files might reveal the officers' alleged racial bias. *Blackwell*, 120 Wn.2d at 825. The city attorney in *Blackwell* told the prosecutor that he was not eligible to receive those records. *Blackwell*, 120 Wn.2d at 825. Because the prosecutor could not obtain the records himself, he asked the trial court to use its subpoena power to require the city to deliver the records. *Blackwell*, 120 Wn.2d at 825. The trial court dismissed the case under CrR 8.3(b). *Blackwell*, 120 Wn.2d at 826. The *Blackwell* court reversed, stating, "The prosecutor's general discovery obligation is limited, however, 'to material and information within the knowledge, possession or control of members of the prosecuting attorney's staff' " under CrR 4.7(a)(4). *Blackwell*, 120 Wn.2d at 826 (quoting CrR 4.7(a)(4)).

■ ¶27 It does not appear here that the State put forth the same effort to satisfy its CrR 4.7(a) discovery obligations. CrR 4.7(a) places the following obligations on prosecutors:

(1) Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting attorney shall disclose to the defendant the following material and information within the prosecuting attorney's possession or control no later than the omnibus hearing:

(i) The names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses;

(ii) any written or recorded statements and the substance of any oral statements made by the defendant, or made by a codefendant if the trial is to be a joint one;

---

made available to the defendant. If the prosecuting attorney's efforts are unsuccessful and if such material or persons are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to the defendant.

. . . .

> (4) The prosecuting attorney's obligation under this section is limited to material and information within the knowledge, possession or control of members of the prosecuting attorney's staff.

¶28 The trial court found that the State failed to provide the required discovery before the omnibus hearing. Specifically, the State failed to provide witness lists and police statements. The trial court specifically found that the lag time between the date of the incident and the date the officers transcribed the report and the witness statements was beyond the prosecutor's control. But the trial court indicated that there was no evidence that the prosecutor's office attempted to work with the sheriff's office to resolve the time lag anytime before February 14, 2007. This detail distinguishes this case from *Blackwell*.

¶29 The trial court described its finding of governmental mismanagement in detail in its findings and conclusions as CrR 8.3(b) requires. The State did not provide any discovery, including the names and addresses of the State's witnesses and any witness statements, before the date of the first scheduled omnibus hearing on January 25 for Natalie and February 1 for Jason. The State failed to timely provide Jason's statement. The State failed to follow the local practice of making essentially all of the police file available to the defense by the omnibus date, as evidenced by the deputy prosecutor's chart. The State mismanaged the first CrR 3.5 hearings by failing to issue subpoenas for its witnesses. The State continued to provide stacks of discovery on the mornings of the rescheduled hearings, thus forcing the trial court to continue the hearings multiple times. The trial court continued Natalie's trial twice and Jason's trial once to allow the State to complete its discovery obligations, which it still did not do.

¶30 Further, the State took nine additional days from the time it received several statements taken by Officer Callas before it provided the statements to defense counsel. The State took eight days from the time it received it to

provide Greig's December 27, 2006 statement to the defense. The State did not subpoena Greig for the day of trial. The trial court then summarized:

> Meanwhile, while all of this was going on and nothing was happening from the state's standpoint, there was almost nothing for the defense counsel to do with speedy trial clock running and the defendants in custody on a 60-day track because of the fact that they are in custody. Dumping the amount of information into the lap of the defense attorneys subsequent to the omnibus hearing and on the day of trial when it was not newly created or discovered and which had been available for weeks is simply unfair and unacceptable.

VRP (Natalie & Jason) (Mar. 1, 2007) at 84. Even without considering the time that the sheriff's office controlled the requested documents, the trial court did not abuse its discretion by finding governmental misconduct. *Blackwell*, 120 Wn.2d at 830.

¶31 The State next contends that Jason and Natalie failed to prove that this mismanagement prejudiced their right to a fair trial because they did not show that the missing discovery would interject any new facts into the case. The State cannot by its own unexcused conduct force a defendant to choose between his speedy trial rights and his right to effective counsel who has had the opportunity to adequately prepare a material part of his defense. *Price*, 94 Wn.2d at 814. "The defendant, however, must prove by a preponderance of the evidence that interjection of new facts into the case when the State has not acted with due diligence will compel him to choose between prejudicing either of these rights." *Price*, 94 Wn.2d at 814. The State claims that no new facts supported Jason and Natalie's claim here.

¶32 Jason and Natalie contend that, while the interjection of new facts can establish prejudice, governmental mismanagement arises from other forms of prejudice as well. These include the State's failure to provide discovery, *State v. Sherman*, 59 Wn. App. 763, 768, 801 P.2d 274 (1990), the State's addition of new charges the day before

trial, *Michielli*, 132 Wn.2d at 245, and the State's failure to provide a witness list along with its encouragement that a witness disobey a court order. *State v. Stephans*, 47 Wn. App. 600, 604, 736 P.2d 302 (1987). They contend that the trial court did not abuse its discretion by failing to address the new facts.

¶33 Regardless, the trial court, citing *Price*, asked about new facts during the March 1 hearing:

> THE COURT: All right. Did [Deputy English's report that defense received on the day of trial that disclosed two new witnesses] interject any new facts into this case?

> MR. MEYER: They did. That's what contained the interviews of the neighbors, it contained interviews of people down in Oregon, other witnesses of that nature; certainly made the timeline I guess more clear or more readily discoverable as far as the timing of events here. It brought up again inconsistent statements by Mr. Grieg [sic]--although we didn't receive that the day of trial; we received that later. Inconsistent statements of Mr. Grieg [sic] between his first taped statement and his second taped statement with Detective Neiser, also with some of the statements that he made at the hospital.

VRP (Natalie & Jason) (Mar. 1, 2007) at 75-77. Even if the interjection of new facts is a requirement for a defendant placed in the position of giving up his speedy trial rights or his right to effective assistance, Natalie and Jason satisfied the obligation here.

¶34 The trial court found the issue of prejudice to be a "closer call." VRP (Natalie & Jason) (Mar. 1, 2007) at 85. The trial court described the prejudice that it found here as "a total failure to provide discovery in a timely fashion, one that would allow for adequate preparation." VRP (Natalie & Jason) (Mar. 1, 2007) at 85. The trial court noted the "substantial" amount of documents that the State handed to defense counsel at the February 20 hearing. VRP (Natalie & Jason) (Mar. 1, 2007) at 86. The trial court also noted the delay in providing Greig's lengthy statement. Finally, the trial court mentioned the discovery that the State had yet to provide, specifically, Deputy Smith's report as the lead detective for the case.

¶35 The State next contends that the trial court erred by failing to address the materiality of the untimely discovery. Dismissal for discovery violations is an extraordinary remedy available only when the alleged misconduct has materially affected the defendant's right to a fair trial. *State v. Jacobson*, 36 Wn. App. 446, 450, 674 P.2d 1255 (1983). It appears that the State is reading this rule such that the defendant must prove the untimely evidence "material" to the case. Br. of Appellant at 48. The State cites *Strickler v. Greene*, 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999), for the common rule that evidence is "material" if there is a reasonable probability that, had the prosecution disclosed the evidence to the defense, the result of the proceeding would have differed. Br. of Appellant at 48. "The mere *possibility* that an item of undisclosed evidence *might* have helped the defense or *might* have affected the outcome of the trial, however, does not establish 'materiality' in the constitutional sense." *State v. Kwan Fai Mak*, 105 Wn.2d 692, 704-05, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986).

¶36 Jason and Natalie contend that the materiality of the evidence is only one basis for dismissal due to discovery violations. They reiterate that the actual test requires the trial court to find governmental mismanagement and prejudice. The plain language of the *Jacobson* court appears to provide that it is, in fact, the prejudice to the defendant's right to a fair trial that must be material, rather than the evidence itself.

¶37 Jason and Natalie's appellate counsel aptly and correctly framed the backdrop of this case during oral argument before us by providing an extensive list of what this case did not entail:

- It was not the case here where the State didn't know what was needed.
- It was not also the case where the State didn't see that sooner or later, if they continued to fail to comply with their obligations because they're the party charging the defendants . . . the court would have to consider that dismissal.

. . . .

- This is not a case where the defense was lying in the weeds on this issue.
- It is also not a case where the tasks to be completed by the defense to prepare for trial were vague or unimportant and unexplained.
- It's not a case where the defense knew all the contents of the statements without receiving the statements themselves.
- It's not a case where the State had any explanation at all for their failure.
- It's not a case where the subpoenas were served prior to trial.
- It's not a case where the State could not have simply earlier dismissed the case without prejudice to refile when they were ready.
- It's not a case where the State could not possibly have known about all of the missing items because a multitude of them were referred to in discovery that they had already handed over.
- And finally, it's not a case where the State stood back and demanded written demands before they would agree to turn over items. They readily and repeatedly agreed to turn over items and yet took no further action.

Wash. Court of Appeals oral argument, *State v. Brooks*, No. 36171-0-II (Dec. 1, 2008), at 25 min., 48 sec.—27 min., 42 sec. (on file with court).

¶38 The State failed to deliver Deputy Smith's report, and he was the lead detective on the case. It seems unlikely that this report could be immaterial in any circumstance, and it was certainly material as to how defense counsel would have interviewed the investigator at trial. The delayed and missing discovery prevented defense counsel from preparing for trial in a timely fashion. We well know that this is a serious case and has serious public interest consequences, as did the trial court, who so carefully addressed its well-reasoned findings and conclusions. But we also know the potential ramifications if the State's

behavior is not curtailed. We hold that the trial court did not abuse its discretion by failing to require Jason and Natalie to establish the materiality of evidence the State had not yet disclosed. We hold that the trial court did not abuse its discretion by finding governmental mismanagement and prejudice.

## II. ALTERNATIVES

¶39 The State argues that even if Jason and Natalie established governmental mismanagement and prejudice, the trial court abused its discretion by dismissing both cases without first considering alternative and less drastic remedies.

¶40 The State cites *State v. Koerber*, 85 Wn. App. 1, 4, 931 P.2d 904 (1996), in support of its argument that the trial court did not consider other possible remedies. In *Koerber*, a trial court dismissed a defendant's drug charge for want of prosecution when one of the State's key witnesses was unable to attend the trial because he was sick and the State could not advise the trial court regarding when the witness would be available. *Koerber*, 85 Wn. App. at 3. The trial court in *Koerber* indicated that it was not dismissing the case under CrR 8.3(b) but, rather, due to lack of prosecution by the State. *Koerber*, 85 Wn. App. at 3. On appeal, the *Koerber* court nevertheless considered whether the State's behavior could satisfy the CrR 8.3(b) requirements. *Koerber*, 85 Wn. App. at 4. The *Koerber* court also analyzed the trial court's decision outside of CrR 8.3's requirements, under a basic abuse of discretion standard, noting, "Dismissal of a criminal case is a remedy of last resort, and a trial judge abuses discretion by ignoring intermediate remedial steps." *Koerber*, 85 Wn. App. at 4. The *Koerber* court included this "remedial steps" language in the section of its opinion where it was not addressing CrR 8.3 requirements. *Koerber*, 85 Wn. App. at 4. Even so, our Supreme Court has included this requirement in its CrR 8.3(b) analysis. *Wilson*, 149 Wn.2d at 12.

¶41 The State contends that the trial court should have considered several other remedies that Washington courts have used before granting dismissals. These include (1) release of the defendant to extend the speedy trial time from 60 to 90 days under *Wilson*, 149 Wn.2d at 12; (2) exclusion of witness testimony under CrR 4.7(h) in *State v. Hutchinson*, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998), *cert. denied*, 525 U.S. 1157 (1999); or (3) suppression of evidence under *State v. Marks*, 114 Wn.2d 724, 730, 790 P.2d 138 (1990). The State argues that the trial court's failure to consider these remedies constituted an abuse of discretion. We disagree based on the facts of this case and note that the State suggested alternatives other than continuances only after the trial court dismissed the case.

¶42 Further, the record here reveals that the trial court considered the February 20 continuance as an alternative to granting dismissals at that time. In Natalie's case, the trial court continued her trial date on February 8 because the State provided her counsel with "six inches" of discovery the previous Friday. VRP (Natalie) (Feb. 8, 2007) at 12. It is clear that the trial court viewed continuances as valid alternatives, but it is unclear from the record whether the trial court considered any of these other alternatives on its own.

¶43 Jason and Natalie argue that the issue of alternative remedies is not properly before this court. They contend that the prosecutor did not propose any alternatives other than a continuance beyond the speedy trial deadline and instead provided only excuses for the delays. They cite *State v. Chichester*, 141 Wn. App. 446, 448, 170 P.3d 583 (2007), for the proposition that "where the trial court acts within its discretion to deny a continuance and the State fails to propose an alternative to dismissal, the court's ruling rests on tenable grounds." Br. of Resp't at 13. We agree. In addition, we hold that the trial court considered the alternative of continuances, which it granted after admonishing the State and telegraphing that dismissal was clearly the next decision.

¶44 To be clear, we do not dispute that dismissal is an extraordinary remedy. *See Koerber*, 85 Wn. App. at 4; *Wilson*, 149 Wn.2d at 12. But we view this as an extraordinary case. Certainly, it would have been better if the trial court had explored alternative intermediate remedies on the record, but considering the State's failure to suggest any other alternatives, we follow the *Chichester* decision that it is the State's burden to suggest such alternatives. *Chichester*, 141 Wn. App. at 448. It is the State that knows the strength of its own case, its ability to sustain the striking of witnesses, and the prudence of dismissing its case to refile when it has assembled its materials. Certainly, the defense does not know the content of the lead detective's report, the content of the victim's statement, or the potential statements by newly disclosed witnesses. Further, we reiterate that the trial court used continuances here as an alternative to dismissal, but it was unable to get the State to comply with its discovery order, even on the eve of trial.

¶45 The trial court here faced very difficult decisions caused by the severe governmental mismanagement, which in turn affected the accuseds' ability to receive a fair trial. The State did not ask the trial court to consider other alternatives besides continuances, and the trial court did not abuse its discretion by granting dismissal.

¶46 Affirmed.

VAN DEREN, C.J., and HOUGHTON, J., concur.