Worswick, J.
¶39 (dissenting) — I respectfully dissent from the majority’s opinion that the district court abused its discretion when it denied Ascension Salgado-Mendoza’s CrRLJ 8.3(b) motion to exclude state toxicologist testimony. The majority holds that the prosecutor committed governmental mismanagement by failing to subpoena a specific toxicologist to testify at trial or to take reasonable steps to ensure the timely disclosure of the testifying toxicologist’s name causing Salgado-Mendoza prejudice. Because the trial court did not abuse its discretion in refusing to exclude the testimony, and because the majority’s decision places an unprecedented discovery requirement on the State, I dissent.
I. Additional Facts
¶40 Salgado-Mendoza was convicted of driving under the influence (DUI) based, in part, on breath test evidence. The state toxicologist has approved the DataMaster to quantitatively measure alcohol in a person’s breath. WAC 448-16--020. During a breath test, the subject blows into a mouthpiece on the DataMaster twice, and vapor from a simulator solution is tested between these two breaths. State v. Straka, 116 Wn.2d 859, 865, 810 P.2d 888 (1991). These samples are used to test the accuracy and reliability of the DataMaster. 116 Wn.2d at 865. State toxicology laboratory employees prepare and test the simulator solution. 116 *253 Wn.2d at 865. To introduce the results of a breath test at trial, the State is required to prove that the DataMaster accurately measured the subject’s breath. State v. Wittenbarger, 124 Wn.2d 467, 489, 880 P.2d 517 (1994). One of the steps required to admit the result is testimony from the state toxicologist regarding the simulator solution’s chemical composition. 124 Wn.2d at 489. Consequently, suppression of the state toxicologist’s testimony necessarily results in suppression of the breath test result evidence. The laboratory is responsible for providing this trial testimony for the entire state of Washington.
¶41 In this case, five months before trial, the State disclosed the names of nine potential toxicologist witnesses who would testify regarding the simulator solution. Three days before trial, Salgado-Mendoza filed a motion in limine for an order to dismiss the case or to exclude the breath test results on the ground that the laboratory had engaged in mismanagement of human resources. The written motion did not argue that defense counsel could not prepare for trial, but rather stated that preparing to cross-examine eight[15] toxicologists would result “in a tremendous and needless waste of [his] time.” Clerk’s Papers (CP) at 40. Salgado-Mendoza further acknowledged that he had all of the materials associated with each toxicologist (approximately 20 pages per witness). He argued that each toxicologist “has his or her own background and story that might well provide fodder for cross-examination independent of the others.” CP at 41. His motion concluded by stating that the State’s mismanagement “may force Mr. Salgado in to the Hobson’s choice of adequately prepared counsel or a forced waiver of his speedy trial rights.” CP at 42 (emphasis added).
¶42 At a hearing on this motion, Salgado-Mendoza again explained that late disclosure of the particular witness’s *254 identity “unnecessarily increase[d] the workload of the defense counsel in terms of having to prepare for cross-examination.” Verbatim Report of Proceedings (VRP) (May 9, 2013) at 21. He told the court that this preparation involved reviewing 160 pages of material. He conceded to the court that the State’s narrowing down of the witness list to three names reduced the amount of paperwork associated with the witnesses to 60 pages. Defense counsel informed the court of a negotiated agreement in King County where the laboratory narrows the list of possible witnesses to three in a timely manner. He then told the court that had the list in this case been narrowed to three names a week prior to trial, he probably would not have brought the motion to dismiss.
¶43 The trial court did not take defense counsel’s assertions that he could not prepare for trial at face value, noting that defense counsel had handled a thousand DUI cases, both as a prosecutor and a defense attorney. The trial court pressed defense counsel for reasons why the delayed disclosure impaired his ability to prepare, and defense counsel struggled to provide them:
[COURT[16]]: I think that the amount of paperwork you have to go through isn’t an extraordinary amount of paperwork. It’s only three of the toxicologists. And I don’t know what the, what significant differences there are in their paperwork. ... So maybe you can be a little more specific as to what your concerns are for me?
[COUNSEL]: [S]o part of it is within their, their charts and graphs.

[COUNSEL]: [T]he other consideration that we had, or concern that we had is the Court will remember that there was a, uh, huge scandal at the toxicology] lab.
VRP (May 9, 2013) at 22-23.
*255 ¶44 Defense counsel also mentioned that he wanted “the ability to do the more in depth background check” on the particular witness, based on what he knew about a “scandal” in the laboratory.[17] VRP (May 9, 2013) at 24. The trial court asked defense counsel about this issue, and learned that defense counsel had not taken the basic steps to determine if any of the toxicologists on the list had been involved in any impropriety because he did not believe it was his obligation to conduct this research:
[COURT]: Well, are you saying that these people are part of the cover up?
[COUNSEL]: I don’t know.

COURT: Well couldn’t you have done this previous? He’s one of the eight toxicologists. Why would you have to wait until it was narrowed down to three?
[COUNSEL]: Well, I don’t—again, it’s, it’s a matter of how much work is the State trying to shuffle from their case load to the defense?
VRP (May 9, 2013) at 24-25. At no point during the motion did counsel say that he was unable to be prepared; nor did he explain how the State’s actions, rather than his own inaction, prejudiced his client.
¶45 Finally, the trial court asked what specific information defense counsel needed, but counsel was unable or unwilling to explain this to the court:
[COURT]: Was there anything specifically you need to research? You have his documentation there.
[COUNSEL]: Your Honor, I will do the best I can with what I have. So, I’ll just ....
[COURT]: Well, I don’t know how much preparation you need for . . . Mr. Johnston’s testimony.
*256 [COUNSEL]: And it really is going to depend to a certain extent on how far he goes. If he’s just, if he just talks about the simulator solution I’m probably not going to talk to him very much at all. If he gets into other issues beyond the simulator solution then it becomes more problematic for me. . . .
[COURT]: Oh. Okay. Well, we’ll see where that goes then.
VRP (May 9, 2013) at 37 (emphasis added).
¶46 The prosecutor told the court that it had attempted to contact the laboratory to provide the name of the witness, but was unsuccessful. The prosecutor explained that her conversations with the toxicology personnel revealed that the laboratory had six persons to cover all of the criminal cases prosecuted every day at any point in the state.
¶47 The trial court denied Salgado-Mendoza’s motion. The trial court ruled that there was no mismanagement, given that the laboratory is required to cover the entire state with only limited staff.[18] Additionally the court found that Salgado-Mendoza was not prejudiced, noting that counsel had five months to prepare and that preparing to cross-examine the State’s witness was not an extraordinary amount of research to do in the time he had.
¶48 At trial, the trial court allowed Salgado-Mendoza to question the toxicologist, Mr. Johnston, outside the presence of the jury regarding the past scandal and problems with the laboratory. Mr. Johnston testified that neither he nor any of the other toxicologists listed as potential witnesses were involved with the prior scandal. The trial court then ruled that Salgado-Mendoza could not introduce evidence of the scandal. Salgado-Mendoza does not appeal this decision. Despite the trial court’s previous invitation to explore the matter further, after Mr. Johnston’s direct examination, Salgado-Mendoza did not mention whether the witness had testified about matters that he had previ *257 ously suggested might be “problematic.” VRP (May 9, 2013) at 240. Instead, he proceeded to thoroughly cross-examine Mr. Johnston in a textbook cross-examination of a toxicologist’s DUI testimony.
II. Analysis
¶49 The majority holds that the trial court abused its discretion by finding the State did not commit misconduct, and by finding Salgado-Mendoza was not prejudiced by the State’s disclosure of the testifying toxicologist on the day of trial. A thorough review of the record convinces me that the trial court did not abuse its discretion. I would reverse the superior court’s decision and affirm the district court on this issue.
¶50 We review a trial court’s CrRLJ 8.3(b) ruling for abuse of discretion. State v. Michielli, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. 132 Wn.2d at 240. Although the majority recites this rule, it does not correctly apply it. See majority at 243-44. In order to hold that the trial court abused its discretion by denying Salgado-Mendoza’s motion, we must be convinced that no reasonable person would take the view adopted by the trial court. State v. Perez-Cervantes, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000).
¶51 The trial court’s decision rested on the correct two-part test—governmental misconduct and prejudice. See Michielli, 132 Wn.2d at 239-40. Relief under CrRLJ 8.3(b) requires a defendant to show by a preponderance of the evidence arbitrary action or governmental misconduct that prejudiced the defendant’s right to a fair trial. Michielli, 132 Wn.2d at 239-40; State v. Kone, 165 Wn. App. 420, 432-33, 266 P.3d 916 (2011).
¶52 Here, Salgado-Mendoza contends the State committed governmental misconduct by violating discovery rule CrRLJ 4.7 because the name of the specific toxicologist *258 witness was not disclosed until the morning of trial. The majority agrees, and holds that the prosecutor, by not subpoenaing a particular witness or otherwise seeking relief under CrRLJ 4.7(d), committed misconduct. But the facts in the record on appeal do not support the majority’s holding that the trial court abused its discretion when it found that the State did not commit misconduct and that disclosure of the specific toxicology witness’s name on the day of trial did not prejudice Salgado-Mendoza. Therefore, I would hold that the trial court did not abuse its discretion in denying Salgado-Mendoza’s motion for CrRLJ 8.3 relief.
A. No Governmental Misconduct
¶53 Salgado-Mendoza has the burden of proving by a preponderance of the evidence that the government committed misconduct. Kone, 165 Wn. App. at 432-33. The trial court did not abuse its discretion when it ruled that Salgado-Mendoza failed to meet this burden.
¶54 Initially, it is important to note that the majority opinion cites to no case where the State was deemed to have committed misconduct when it provided all possible discovery several months prior to trial, such as is the case here. Every case cited by the majority to support its position on this issue involves circumstances where the State acted in a way that surprised the defense with new facts, or failed to provide the defense with substantive facts the State had in its possession. See State v. Brooks, 149 Wn. App. 373, 386, 203 P.3d 397 (2009) (the State did not provide any discovery, including names and addresses of witnesses and any witness statements, failed to make the police file available to the defense, and continued to provide stacks of new discovery on the mornings of hearings); Michielli, 132 Wn.2d at 243-44 (five days before trial, the State added four new charges); State v. Dailey, 93 Wn.2d 454, 459, 610 P.2d 357 (1980) (the State did not comply with the omnibus order for over a month after the hearing, and failed to disclose any names and addresses of the State’s witnesses until the day *259 before trial). Here, the majority holds that the State has engaged in misconduct not by failing to provide discovery, but in failing to narrow a witness list.
¶55 In holding that the State committed misconduct, the majority relies almost entirely on the case of State v. Blackwell, 120 Wn.2d 822, 845 P.2d 1017 (1993). But the Blackwell court reversed a trial court’s dismissal under CrR 8.3(b), holding that a prosecutor’s actions were reasonable based, in part, on the fact that the prosecutor had suggested that the court issue a subpoena duces tecum to obtain requested discovery, which the trial court declined to do. 120 Wn.2d at 832. Blackwell does not stand for the proposition that a prosecutor commits misconduct as a matter of law when it does not request a subpoena to obtain information.
¶56 Here, as in Blackwell, the prosecutor’s actions were reasonable. There was “no showing of ‘game playing”, mismanagement, or other governmental misconduct on the part of the State that prejudiced the defense.” 120 Wn.2d at 832. The prosecutor made the identity of all potential witnesses known to Salgado-Mendoza five months before trial. She made repeated requests for the laboratory to narrow down the list of available witnesses, narrowed the list to three names the day before trial, and provided Salgado-Mendoza with the name of the testifying witness as soon as she was able to obtain it. Blackwell does not support the majority’s holding that this is misconduct.
¶57 Moreover, the majority ignores the practical considerations of serving individual subpoenas on one laboratory that covers multiple courts across the state. The toxicology lab receives approximately 12,000 cases per year and testifies in all 39 Washington counties. The toxicologists are required to be available for multiple trials simultaneously. A criminal trial date is a moving, and sometimes disappearing, target. Cases settle and get continued up to the very last minute. The majority of criminal cases never go to trial. The majority’s decision labels the state toxicologist’s hiring *260 decisions “mismanagement” because they do not provide for enough toxicologists to individually cover each criminal trial set in the state. I cannot agree with this holding.
B. No Prejudice
¶58 Salgado-Mendoza has the additional burden of proving prejudice. The trial court did not abuse its discretion when it ruled that he failed to meet this burden.
¶59 It is true that the government’s failure to act with due diligence may prejudice either the defendant’s right to a speedy trial or his right to be represented by counsel who has had sufficient opportunity to adequately prepare. State v. Price, 94 Wn.2d 810, 814, 620 P.2d 994 (1980). However, under Price and its progeny, Woods, the defendant must prove by a preponderance of the evidence that the State’s delay interjected “new facts” into the case, which forced the defendant to choose between two constitutional rights. State v. Woods, 143 Wn.2d 561, 583-84, 23 P.3d 1046 (2001);[19] Price, 94 Wn.2d at 814; see also Michielli, 132 Wn.2d at 244-45. The majority rejects this standard, holding instead that a defendant’s simple assertion that he feels forced to choose between his right to speedy trial and going to trial unprepared, without more, is sufficient to prove prejudice.
¶60 Even assuming Salgado-Mendoza is not required to prove that the State interjected new facts, he still cannot prove he was actually prejudiced by the late disclosure of the specific toxicologist. The majority’s decision holding Salgado-Mendoza was prejudiced as a matter of law is based on defense counsel’s bald assertion that he would have preferred to request a continuance, but that Salgado-Mendoza did not want to forgo his speedy trial rights. The trial court did not accept the statement, nor should we without an adequate showing that the delayed disclosure *261 actually prevented counsel from preparing for trial. Defense counsel’s assertion is insufficient to prove prejudice as a matter of law. The trial court was entitled to explore and reject this assertion, which it did, and the trial court did not abuse its discretion by denying Salgado-Mendoza’s motion. See State v. Bradfield, 29 Wn. App. 679, 682, 630 P.2d 494 (1981) (“Absent some showing of actual prejudice, we will not interfere with the trial court’s exercise of discretion in denying sanctions pursuant to CrR 4.7(h)(7)(i).”).
¶61 Additionally, Salgado-Mendoza argues, and the majority agrees, that asking counsel to prepare for trial by investigating nine potential toxicology witnesses placed an “unfair burden” on, and therefore prejudiced, the defense. Br. of Resp’t at 11 n.3; majority at 249. By reaching this conclusion, the majority substitutes its judgment for that of the trial court. Therefore, I disagree.
¶62 Defense counsel told the trial court that he was in the possession of discovery consisting of 20 pages of records for each toxicologist. The trial court ruled that this was not an unreasonable amount of discovery to review over the course of five months, especially in light of defense counsel’s experience. The trial court did not abuse its discretion in making this ruling.
¶63 The trial court considered the issue of prejudice when ruling on Salgado-Mendoza’s motion. The court pressed defense counsel for reasons why the delayed disclosure impaired his ability to prepare, and defense counsel struggled to provide them. The trial court’s ruling that counsel could adequately prepare for cross-examination of a toxicologist, given his experience and the fact that he had the names and records of the potential witnesses five months before trial, is not manifestly unreasonable or based on untenable grounds. The reasonableness of the trial court’s decision is further illustrated by the fact that after the trial court suggested that Salgado-Mendoza bring any specific issues regarding his inability to prepare for the toxicologist’s proffered testimony to the trial court’s atten *262 tion, he failed to do so, indicating that he did not need additional time to prepare for cross-examination.
¶64 It is clear from reading the record that counsel was not unable to prepare—he was just unwilling to prepare for cross-examination. He did not explain to the court how the toxicologists differed from one another. Nor did he explain what additional preparation he needed. The trial court considered whether the delayed disclosure prejudiced Salgado-Mendoza and concluded it did not. Salgado-Men-doza must prove he suffered actual prejudice from the State’s delay. He has failed to meet this burden. I disagree with the majority and hold that the trial court’s denial of Salgado-Mendoza’s CrRLJ 8.3(b) motion was not an abuse of discretion.
C. No Clear Direction
¶65 Although the majority engages in a hypothetical Hutchinson[20] analysis to suggest that the trial court should have suppressed the evidence in this case, the majority gives no clear direction to the trial court on remand or to future criminal trials.[21] The majority merely instructs the State to “ensure that it provides the name and address of the person or persons it intends to call at trial or comply with CrRLJ 4.7(d) when preparing for the new trial.” Majority at 252. The majority mentions the lack of resources at the toxicology lab, and justifies its ruling by explaining that “without our ability to impose sanctions, the State would have no incentive to remedy the problem to the extent it is caused by lack of resources being allocated to the toxicology lab.” Majority at 248. But the remand instruction is too imprecise to provide this incentive.
¶66 The majority’s instruction to the court on remand sets no standard for when toxicology witnesses need to be *263 disclosed. Rather, it merely implies that the prosecutor should request a subpoena when she cannot otherwise produce the name of the toxicology witness. How many days before trial must this disclosure be made? Must the State disclose only one name despite defense counsel’s assertion that narrowing the list down to three names would have been sufficient? Henceforth, will toxicologist testimony, and thus, every breath test in this division, be suppressed where the state toxicology laboratory cannot produce the name of one specific simulator solution witness by some unspecified deadline? How many new employees must the state toxicologist hire, so that they can stand by the ready for trials that may be settled or continued? Without a showing of misconduct, prejudice, or need, the majority decision throws every DUI prosecution in this court’s division into chaos.
III. Conclusion
¶67 In conclusion, I am not convinced that no reasonable person would take the view adopted by the trial court when it ruled that the State did not commit misconduct, and that the State’s actions were not prejudicial. Thus I would hold that the trial court did not abuse its discretion in refusing to suppress the toxicologist’s testimony. I would reverse the superior court and affirm the trial court on this issue.
Review granted at 186 Wn.2d 1017 (2016).

 In their briefing and arguments before the trial court, the parties consistently refer to “eight” toxicologist’s names on the State’s witness list. Clerk’s Papers at 40. There are, in fact, nine names on the list.

 A typographical error in the transcript lists this speaker as “Clerk.” It is clear from the context that the speaker is the trial judge.

 For two years, ending in 2007, Ann Marie Gordon, a manager for the state’s breath testing program, falsely certified that she had prepared and tested DataMaster simulator solutions. In re Pers. Restraint of Hacheney, No. 39448-1-II, 2012 WL 2401667, at n.16, 2012 Wash. App. LEXIS 1518, at *40-41 n.16 (unpublished portion) (Wash. Ct. App. June 26, 2012).

 There are 39 courts of general jurisdiction and over 150 courts of limited jurisdiction in Washington State. Washington State Court Directories, Wash. Cts., http://www.courts.wa.gov/court_dir/.

 In Woods, the defendant moved to dismiss the charges as a result of the State’s delayed production of the results of forensic testing. Woods, 143 Wn.2d at 582-83.

 State v. Hutchinson, 135 Wn.2d 863, 882-83, 959 P.2d 1061 (1998).

 The majority properly notes that this dispute will be remanded for a new trial regardless of our holding and that the decision to impose sanctions is a fact-specific determination that must be resolved on a case-by-case basis.