# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46062-9-II |
| Appellant, | |
| v. | |
| ASCENSION SALGADO-MENDOZA | PUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. — The State appeals a superior court order reversing Ascencion Salgado-Mendoza's district court jury trial conviction for driving under the influence (DUI). The State argues that the superior court erred when it reversed the district court's denial of Salgado-Mendoza's motion to exclude a State toxicologist's testimony for governmental mismanagement under CrRLJ 8.3(b) based on the State's failure to comply with CrRLJ 4.7(a). Because the prosecutor failed to take reasonable steps to ensure the timely disclosure of the testifying toxicologist's name under CrRLJ 4.7(d) and this failure forced Salgado-Mendoza to choose between his speedy trial rights and going to trial fully prepared, we hold that the district court erred when it denied Salgado-Mendoza's motion to exclude the toxicologist's testimony. We affirm the superior court's reversal of Salgado-Mendoza's district court conviction and remand to the district court for a new trial.

No. 46062-9-II

FACTS

I. BACKGROUND

On the evening of August 11, 2012, a Washington State Patrol trooper observed the vehicle Salgado-Mendoza was driving struggling to stay in its lane of travel for about five miles. The trooper stopped the vehicle.

While talking to Salgado-Mendoza, the trooper noticed a strong odor of intoxicants coming from the truck and observed that Salgado-Mendoza had bloodshot, watery, droopy eyes and was responding to the trooper's requests slowly and lethargically. Salgado-Mendoza admitted that he had recently consumed two beers. When Salgado-Mendoza started to get out of the vehicle, it started to roll backwards and the trooper asked him to apply the brakes; Salgado-Mendoza's response was delayed and he did not appear to notice that his vehicle was moving. Once outside the vehicle, the trooper could smell alcohol on Salgado-Mendoza's breath, and Salgado-Mendoza performed poorly on the voluntary field sobriety tests.

The trooper arrested Salgado-Mendoza for DUI. After his arrest, Salgado-Mendoza voluntarily submitted to breath tests. Two breath samples showed that his blood alcohol concentration was 0.103 and 0.104.

II. DISTRICT COURT PROCEEDINGS

Several months before his district court trial date on the DUI charge, Salgado-Mendoza requested that the State disclose information about any and all expert witnesses the State intended

2

to call at trial. In December 2012, the State filed a witness list providing the names of nine possible Washington State Patrol Crime Lab toxicologists, one of whom would testify at trial.[1]

On April 24, 2013, about two weeks before the May 9 trial date, Salgado-Mendoza filed a supplemental discovery demand requesting, in part, that the State disclose the names and other relevant information for all expert witnesses the State intended to call. The State apparently attempted to contact the toxicology lab by phone to narrow the list of possible toxicology witnesses, but was unsuccessful.

On May 6, three days before trial, Salgado-Mendoza filed a motion requesting that the district court dismiss the case or exclude the toxicologist's evidence based on governmental misconduct. In a supporting declaration, defense counsel asserted that despite numerous defense requests, the State had failed to disclose the name of the toxicologist who would testify and, instead, had provided a list of eight individuals, one of whom would testify.

Defense counsel further asserted that (1) the toxicologist was an indispensable witness because the technician prepared the "simulator solution" used in the breath test in this case, and (2) the State's failure to disclose which potential witness would testify was unduly burdensome because the defense would have to prepare to cross-examine eight individuals. Clerk's Papers (CP) at 40. Defense counsel also stated that even if the State asserted it had no control over the

---

[1] Although the State asserted in its motion for discretionary review that it had subpoenaed the State toxicologist who had tested the standard solution used in Salgado-Mendoza's breath test and the toxicology lab did not reply to that subpoena, the State does not cite to the record and we can find no reference to the State subpoenaing any witness in the record before us. Because the record does not support the State's assertion that it had subpoenaed the toxicology lab, we do not consider this fact.

toxicology lab, the State's inability to identify the specific person or persons who would testify a week before the trial date was "simply mismanagement of human resources." CP at 41.

On May 8, the afternoon before trial, the State received a list of three toxicologists, one of whom might testify the next day. The State provided this list to Salgado-Mendoza.

When the parties appeared for trial on May 9, Salgado-Mendoza argued his May 6 motion and asked the district court to exclude the toxicologist's testimony or to dismiss the DUI charge because the State had still not disclosed which toxicologist would testify. Salgado-Mendoza also suggested that extensive background checks were necessary in light of a recent "scandal" at the toxicology lab and the possibility that some of the proposed witnesses may have been involved in a related "cover up." Report of Proceedings (RP) (May 9, 2013) at 23. He again characterized the State's failure to disclose a specific toxicology witness as governmental mismanagement.

During argument on this motion, the State disclosed that it had finally learned that Chris Johnston would be testifying. The State then argued that it was the defense's mismanagement that created the issue, rather than the late disclosure, because the State had provided a list of eight possible witnesses in time for the defense to prepare for trial. It also asserted that (1) the toxicology lab was overworked and understaffed, (2) the State had done its "due diligence" and had requested a shorter list earlier, but the lab was unable to comply, (3) the State was not required to call every witness on its witness list, and (4) it provided the defense with the name of the toxicologist who would testify as soon as that information was available. RP (May 9, 2013) at 31.

Agreeing that the toxicologist witnesses were "fungible" and that having to prepare for the eight potential witnesses was not unduly burdensome or prejudicial to the defense, the district court denied Salgado-Mendoza's motion. RP (May 9, 2013) at 22. The district court also commented

4

that much of the problem was caused by the realities of lack of funding rather than governmental mismanagement. After the district court ruled, defense counsel stated that although he would normally seek a continuance under these circumstances, Salgado-Mendoza did not want to waive his speedy trial rights and it would be very difficult to reschedule the defense expert.

The trial began, and Johnston testified that day. During the trial, the district court also granted the State's motion to exclude a portion of a defense expert's testimony concerning the breath-alcohol testing machine. The jury found Salgado-Mendoza guilty of DUI.

### III. APPEAL TO SUPERIOR COURT

Salgado-Mendoza appealed his conviction to the superior court. Finding that the district court had abused its discretion by (1) not excluding the toxicologist's testimony due to the State's violation of the discovery rules and mismanagement of the case in failing to disclose its witness prior to trial, and (2) excluding the defense expert's testimony about the breath-alcohol testing machine, the superior court reversed the DUI conviction and remanded the matter for a new trial.

As to the toxicologist's testimony, the superior court stated in its memorandum opinion and order that (1) the lab's limited resources and busy schedule did not justify the State's failure to comply with the discovery rules and (2) dismissal would not have been an appropriate sanction because excluding the evidence would eliminate any possible prejudice caused by the governmental misconduct. The superior court also rejected the State's argument that the possible witnesses were interchangeable and noted that a continuance would not have been a reasonable option because "it appear[ed] likely that the same thing would have happened if a continuance was granted, i.e. the State would have provided 8 names, narrowed it down to 3 names the day before trial, and have one of the three show up for the new trial date." CP at 59. And in response to the

5

State's argument that it was not required to call all of the witnesses it had disclosed, the superior court rejected this argument because CrRLJ 4.7(a)(1)(i) required the State to disclose the witnesses it *intended* to call, and the State never intended to call all eight witnesses.

IV. MOTION FOR DISCRETIONARY REVIEW

The State moved for discretionary review of the superior court's decisions on the toxicologist's testimony and the defense expert's testimony. We granted review in part, but we limited our review to "whether state toxicologist witnesses are within the control of the prosecution's staff, . . . and the larger issue [of] whether the superior court's decision regarding the [suppression of] the toxicologist's testimony is correct." Ruling Granting Mot. for Discretionary Review (July 10, 2014), at 5.

ANALYSIS

The State argues that the superior court's decision that the State had engaged in governmental misconduct by violating the discovery rules is erroneous. It contends that the prosecutor was not required to disclose which toxicologist would testify until the day of trial because that information was not yet within her knowledge, possession, or control, as required under CrRLJ 4.7(a)(4). The State further contends that this information was under the State toxicologist's full control and that the toxicologist would not respond to subpoenas until the trial date is certain. We hold that the prosecutor violated the discovery rules by failing to take reasonable steps to obtain the name of its witness in a timely manner as required under CrRLJ 4.7(d) and that this in turn amounted to governmental misconduct under CrRLJ 8.3(b).[2] We further

___

[2] When reviewing an appeal of a district court decision followed by an appeal to the superior court, we review the district court's decision to determine whether that court committed any errors of law, accepting any factual determinations that are supported by substantial evidence and reviewing

hold that this misconduct was prejudicial and that the exclusion of the toxicologist's testimony was the proper remedy.[3]

As a preliminary matter, we note that regardless of our decision, this case will be remanded for a new trial based on the district court's error in excluding portions of the defense expert witness's testimony because we did not accept discretionary review of that issue. We reach the issue of the exclusion of the toxicologist's testimony because it is an issue of public importance and because it is an issue that could arise again on remand.

## I. LEGAL STANDARDS

We review a trial court's CrRLJ 8.3(b)[4] ruling for abuse of discretion. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997); *State v. Brooks*, 149 Wn. App. 373, 384, 203 P.3d 397 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Michielli*, 132 Wn.2d at 240; *Brooks*, 149 Wn. App. at 384.

Relief under CrRLJ 8.3(b) "requires a showing of arbitrary action or governmental misconduct, but the governmental misconduct need not be of an evil or dishonest nature, simple

---

alleged errors of law de novo. RALJ 9.1; *State v. Jim*, 156 Wn. App. 39, 41, 230 P.3d 1080 (2010), *aff'd*, 173 Wn.2d 672, 273 P.3d 434 (2012).

[3] We disagree with the dissent (Dissent at 17, 24) that our holding imposes an "unprecedented discovery requirement" and that we pass judgment on the toxicology lab's hiring practices. We do not. Instead CrRLJ 4.7 has always required the State to disclose the witnesses it intends to call at trial and our holding today addresses the State's discovery obligations and not the hiring practices of the lab.

[4] This rule is identical to CrR 8.3(b). *Compare* CrRLJ 8.3(b) *with* CrR 8.3(b). Although the cases we cite in this section discuss CrR 8.3(b), they still apply here because the two rules are identical. *See City of Seattle v. Holifield*, 170 Wn.2d 230, 238, 240 P.3d 1162 (2010) (applying case law addressing CrR 8.3(b) when addressing an issue related to CrRLJ 8.3(b)).

mismanagement is enough." *Brooks*, 149 Wn. App. at 384 (citing *State v. Dailey*, 93 Wn.2d 454, 457, 610 P.2d 357 (1980)). Violations of obligations under the discovery rules can support a finding of governmental misconduct. *See Brooks*, 149 Wn. App. at 375-76.

The defendant must also show "that such action prejudiced his right to a fair trial." *Brooks*, 149 Wn. App. at 384 (citing *Michielli*, 132 Wn.2d at 240). "'Such prejudice includes the right to a speedy trial and the right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense.'" *Brooks*, 149 Wn. App. at 384 (internal quotation marks omitted) (quoting *Michielli*, 132 Wn.2d at 240).

## II. VIOLATION OF DISCOVERY OBLIGATIONS

CrRLJ 4.7(a), which governs criminal discovery in courts of limited jurisdiction, sets out the prosecutor's obligations under the discovery rules. CrRLJ 4.7(a)(1) provides in part,[5]

> Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting authority shall, upon written demand, disclose to the defendant the following material and information *within his or her possession or control* concerning:
> (i) the names and addresses of persons whom the prosecuting authority intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses;
> . . . .
> (vii) any expert witnesses whom the prosecuting authority will call at the hearing or trial, the subject of their testimony, and any reports relating to the subject of their testimony that they have submitted to the prosecuting authority.

---

[5] This rule is the same as CrR 4.7(a)(1) except that CrR 4.7(a)(1) refers to the "prosecuting attorney" rather than the "prosecuting authority" and does not require a "written demand" from the defendant. *Compare* CrR 4.7(a)(1) *with* CrRLJ 4.7(a)(1). The State does not argue that Salgado-Mendoza did not make the proper written demand.

(Emphasis added.)  CrRLJ 4.7(a)(4) further provides that this obligation "is limited to material and information within the actual knowledge, possession, or control of members of [the prosecuting authority's] staff."[6]

We assume without deciding that the prosecutor's actions are not in violation of CrRLJ 4.7(a) because the record shows that the prosecutor did not have knowledge of the name of the person who ultimately testified until the day of trial and, arguably, did not have direct control over the toxicology lab.[7]  But regardless of whether the State had control, the State had a further obligation to attempt to acquire and then disclose that information from the toxicology lab under CrRLJ 4.7(d), which provides,[8]

> Upon defendant's request and designation of material or information in the knowledge, possession or control of other persons which would be discoverable if in the knowledge, possession or control of the prosecuting authority, the prosecuting authority shall attempt to cause such material or information to be made available to the defendant.  If the prosecuting authority's efforts are unsuccessful and if such material or persons are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to the defendant.

---

[6] This rule is the same as CrR 4.7(a)(4) except that CrR 4.7(a)(4) refers to the "prosecuting attorney" rather than the "prosecuting authority."  Compare CrR 4.7(a)(4) *with* CrRLJ 4.7(a)(4).

[7] *But see State v. Woods*, 143 Wn.2d 561, 583, 23 P.3d 1046 (2001) (stating that although crime laboratory's delay in completing deoxyribonucleic acid (DNA) testing could not be attributed to the State's counsel, "it is clear that conduct of employees of the crime laboratory, which is lacking in due diligence, constitutes actions on the part of the State." *See State v. Wake*, 56 Wn. App. 472, 475, 783 P.2d 1131) (1989) (observing that actions of the employees of crime lab are considered actions of the State)).

[8] This rule is the same as CrR 4.7(d) except that CrR 4.7(d) refers to the "prosecuting attorney" rather than the "prosecuting authority."  *Compare* CrR 4.7(d) *with* CrRLJ 4.7(d).

If the prosecutor's attempts to obtain this information failed, the district court should have been notified in a timely manner so it could issue the appropriate orders to accomplish this disclosure in time to allow the defense to adequately prepare for trial. CrRLJ 4.7(d). Here, the State, as the party requesting the information from the third party, was in the best position to notify the district court in a timely manner.

Our Supreme Court addressed a similar situation in *State v. Blackwell*, 120 Wn.2d 822, 845 P.2d 1017 (1993).[9] In that case, the trial court ordered the State to produce personnel files of two Tacoma police officers. *Blackwell*, 120 Wn.2d at 824. After the Tacoma Police Department and the Tacoma City Attorney's Office refused to produce the files upon the prosecutor's request, the prosecutor filed a motion to reconsider the previous discovery order under CrR 4.7(d). *Blackwell*, 120 Wn.2d at 826-27. In this motion, the State notified the trial court and defense counsel that the requests for these materials had been denied, asserted that it could not produce records that were not under the prosecutor's control, and suggested that the court issue a subpoena duces tecum. *Blackwell*, 120 Wn.2d at 825, 827.

The trial court found that the prosecutor had not made sufficient efforts to produce the documents and ordered the State to produce the documents. *Blackwell*, 120 Wn.2d at 827. The defendant, however, declined to request a subpoena, asserting that it would be futile given the response the prosecutor had already received. *Blackwell*, 120 Wn.2d at 827. The trial court later granted a defense motion to dismiss the case for mismanagement under CrR 8.3(b). On appeal, our Supreme Court determined that the State's actions did not warrant dismissal for governmental

---

[9] Although *Blackwell* discusses CrR 4.7(d) rather than CrRLJ 4.7(d), the case is still relevant because these rules are substantially the same.

mismanagement because, in part, the prosecutor's actions, which included trying to obtain the records and its CrR 4.7(d) motion, were "reasonable." *Blackwell*, 120 Wn.2d at 832.

To the extent the State relies on *Blackwell* for its argument that CrRLJ 4.7(a)(1) does not apply because the witness information was not within its possession or control, that argument has some merit because *Blackwell* suggests that the prosecutor may not have possession or control of materials in the custody of another agency. But as Salgado-Mendoza recognizes, it is CrRLJ 4.7(d) not CrRLJ 4.7(a)(1) that guides our analysis here. And unlike in *Blackwell*, the record here does not show that the State made a reasonable effort to obtain the testifying toxicologist's name from the toxicology lab in a timely manner—at most, the record shows that the State contacted the lab and talked to someone in the lab about narrowing the witness list.

CrRLJ 4.7(d) clearly requires the prosecutor to obtain discoverable material or information in another party's possession or control at the defendant's request. Although it is the court's responsibility to "issue suitable subpoenas or orders to cause such material to be made available to the defendant" if the prosecutor's attempts to obtain the material or information are unsuccessful, the court cannot do so unless the prosecutor first advises the court that its efforts are unsuccessful. CrRLJ 4.7(d). Here, unlike in *Blackwell*, the record shows that the prosecutor never attempted to seek any assistance from the district court under CrRLJ 4.7(d). Instead, it acquiesced to the toxicology lab's refusal to supply the name of the toxicologist who would testify, placing a significant burden on the defense.[10]

---

[10] The State also cites *Brooks* for the premise that the State did not have possession or control of the witness information. *Brooks* is not helpful to the State because, although it does not directly apply CrR 4.7(d), it also emphasizes that the State must put forth sufficient evidence to satisfy CrR 4.7(a) in order to avoid discovery sanctions. 149 Wn. App. at 385-86.

The State's approach is particularly concerning because the prosecutor acknowledged that refusing to disclose the particular toxicologist who would testify until immediately before trial is the toxicology lab's common practice.[11] Although we understand that the prosecutor's office is not directly in charge of the toxicology lab, the prosecutor had at her disposal a mechanism for ensuring compliance from the toxicology lab, namely bringing a CrRLJ 4.7(d) motion and asking for the trial court to issue a subpoena. The prosecutor's failure to use the tools at her disposal to provide the defense with a specific witness's name before the date of trial is not reasonable. And her failure to do so defeats the purpose of the discovery rules, which are, in part, intended to afford an opportunity to prepare for effective cross-examination. *State v. Yates*, 111 Wn.2d 793, 797-98, 765 P.2d 291 (1988).

Furthermore, without our ability to impose sanctions, the State would have no incentive to remedy the problem to the extent it is caused by lack of resources being allocated to the toxicology lab. *See State v. Wake*, 56 Wn. App. 472, 475-76, 783 P.2d 1131 (1989) (unavailability of toxicologist witness due to congestion at State crime lab should not be sufficient to allow continuances that exceed the speedy trial period because the State would then have no incentive to remedy the problem). Accordingly, we agree with the superior court that the district court abused its discretion in finding that the prosecutor had not violated the discovery rules.[12]

---

[11] The dissent argues that the State disclosed "all potential" witnesses to the defense. That is the crux of this appeal—whether the disclosure of "all potential" witnesses satisfies the State's burden to disclose witnesses it intends to call at trial. The State intended to call only one toxicologist to testify and the State admits it did not disclose the name of the testifying toxicologist until the morning of trial.

[12] To the extent the State's arguments can also be construed as asserting that it complied with CrRLJ 4.7(a)(1)(i) because the toxicologist who testified was among the nine possible witnesses the State disclosed several months before trial, we also reject that argument. As the superior court

As to prejudice, the record shows that defense counsel's preference was to request a continuance to allow him to prepare to cross-examine Johnston, but defense counsel did not request a continuance because Salgado-Mendoza did not want to forgo his speedy trial rights.[13]  Thus, the record shows that the delayed disclosure of the toxicologist witness required Salgado-Mendoza to choose between going to trial with adequately prepared counsel and his speedy trial rights.  That counsel could have theoretically prepared by investigating nine potential witnesses, eight of whom would not testify, placed an unfair burden on the defense.  This is sufficient to establish prejudice.[14]  *See Brooks*, 149 Wn. App. at 384 (prejudice can be established if the defendant is forced to choose between right to speedy trial and going to trial unprepared).  Accordingly, we hold, as the superior

---

noted, the rule requires the State to disclose the witnesses it *intends* to call as a witness, and the State clearly had no intention of calling all nine of these witnesses.  CrRLJ 4.7(a)(1)(i).  We hold that placing the burden of preparing to cross-examine eight additional witnesses who will not appear at trial is not a reasonable burden to place on the defense, particularly when the discovery rules also contain a mechanism for requiring a more specific answer from the toxicology lab.

[13] Defense counsel also stated that it would likely be difficult to reschedule the defense expert witness.

[14] The dissent asserts that to show that he was prejudiced by having to choose between his speedy trial rights and going forward with unprepared counsel, Salgado-Mendoza must prove by a preponderance of the evidence that the State's delay interjected "'new facts'" into the case that forced him to choose between two constitutional rights.  Dissent at 25 (quoting *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980); citing *Woods*, 143 Wn.2d at 583-84; *Michielli*, 132 Wn.2d at 229).  But the cases the dissent cites involved either the denial of a motion to dismiss or the dismissal of charges, not the lesser sanction of suppression that is at issue here.  *Woods*, 143 Wn.2d at 585; *Michielli*, 132 Wn.2d at 239, 243-45; *Price*, 94 Wn.2d at 813.  And in one of these cases, *Woods*, our Supreme Court suggests that a different standard would apply when the defendant is not seeking dismissal.  143 Wn.2d at 585 (addressing late disclosure of DNA evidence, commenting that the trial court could have imposed sanctions other than dismissal under CrR 4.7, but noting that such lesser sanctions were never requested).  Furthermore, asking Salgado-Mendoza to prove to the trial court that the failure to timely disclose the specific witness delayed discovery of new facts before counsel had the opportunity to further investigate the designated witness would be asking Salgado-Mendoza to perform an impossible task.

court did, that the district court erred when it denied Salgado-Mendoza's motion to exclude the toxicologist's testimony.

### III. REMEDY

We must decide whether dismissal or exclusion of the toxicologist's testimony was the proper remedy here. "[T]he question of whether dismissal is an appropriate remedy is a fact-specific determination that must be resolved on a case-by-case basis." *State v. Sherman*, 59 Wn. App. 763, 770-71, 801 P.2d 274 (1990).

After finding governmental misconduct, the trial court may dismiss the case, but it must first consider lesser remedial action. *City of Seattle v. Holifield*, 170 Wn.2d 230, 238-39, 240 P.3d 1162 (2010); *see also State v. McReynolds*, 104 Wn. App. 560, 579, 17 P.3d 608 (2000). "[S]uppression presents an appropriate, less severe remedy than dismissal under CrRLJ 8.3(b)," and is preferable when suppression of the evidence will eliminate the potential prejudice caused by the misconduct. *Holifield*, 170 Wn.2d at 239; *McReynolds*, 104 Wn. App. at 579.

Because the governmental misconduct at issue here was discovery related, the test applied to discovery violations is instructive. *See State v. Hutchinson*, 135 Wn.2d 863, 882-83, 959 P.2d 1061 (1998). In determining whether exclusion or suppression of evidence is justified, courts consider the following factors:

> (1) [T]he effectiveness of less severe sanctions; (2) the impact of witness preclusion on the evidence at trial and the outcome of the case; (3) the extent to which the [party opposing admission of the evidence] will be surprised or prejudiced by the witness's testimony; and (4) whether the violation was willful or in bad faith.

*Hutchinson*, 135 Wn.2d at 883.

Here, the disclosure of the witness's name on the day of trial denied the defense the opportunity to fully investigate the toxicology lab witness. The less severe sanction of a

14

continuance could have allowed the defense additional time to prepare. But it would have required Salgado-Mendoza to waive his speedy trial rights, which he did not want to do. And it was also likely that this less severe sanction would not have been effective because the toxicology lab would have once again not disclosed the name of the witness until immediately before trial.

Further, in this instance, the impact of witness preclusion would not have been fatal to the State's case. The suppression of the toxicologist's testimony would have likely resulted in the exclusion of the blood alcohol test results. But the State had considerable evidence of intoxication apart from the breath tests, specifically the arresting trooper's observations of Salgado-Mendoza's driving and signs of intoxication and Salgado-Mendoza's performance on the field sobriety tests.

Salgado-Mendoza would not likely have been surprised or prejudiced by the witness's testimony. But the issue here was not a matter of surprise in regard to the nature of the proposed testimony—it was the interference with defense counsel's ability to investigate the witness for possible bias or credibility issues, particularly in light of recent incidents involving the toxicology laboratory. This record is inadequate for us to further examine this factor. Finally, it does not appear that the State was acting in bad faith.

These four factors, as a whole, would not likely have justified dismissal of the case, but suppression was a reasonable alternative to dismissal. This alternative would have both protected Salgado-Mendoza's speedy trial rights and his right to be represented by fully-prepared counsel and yet not have required dismissal of the State's case for lack of evidence. This is a reasonable balance under these circumstances.

No. 46062-9-II

We affirm the superior court's reversal of Salgado-Mendoza's district court conviction and remand to the district court for a new trial. On retrial, the State should ensure that it provides the name and address of the person or persons it intends to call at trial or comply with CrRLJ 4.7(d) when preparing for the new trial.

JOHANSON, J.

I concur:

MELNICK, J.

16

Worswick, J. (dissenting) — I respectfully dissent from the majority's opinion that the district court *abused its discretion* when it denied Ascencion Salgado-Mendoza's CrRLJ 8.3(b) motion to exclude state toxicologist testimony. The majority holds that the prosecutor committed governmental mismanagement by failing to subpoena a specific toxicologist to testify at trial or to take reasonable steps to ensure the timely disclosure of the testifying toxicologist's name causing Salgado-Mendoza prejudice. Because the trial court did not abuse its discretion in refusing to exclude the testimony, and because the majority's decision places an unprecedented discovery requirement on the State, I dissent.

## I. ADDITIONAL FACTS

Salgado-Mendoza was convicted of driving under the influence (DUI) based, in part, on breath test evidence. The state toxicologist has approved the DataMaster to quantitatively measure alcohol in a person's breath. WAC 448-16-020. During a breath test, the subject blows into a mouthpiece on the DataMaster twice, and vapor from a simulator solution is tested between these two breaths. *State v. Straka*, 116 Wn.2d 859, 865, 810 P.2d 888 (1991). These samples are used to test the accuracy and reliability of the DataMaster. 116 Wn.2d at 865. State toxicology laboratory employees prepare and test the simulator solution. 116 Wn.2d at 865. To introduce the results of a breath test at trial, the State is required to prove that the DataMaster accurately measured the subject's breath. *State v. Wittenbarger*, 124 Wn.2d 467, 489, 880 P.2d 517 (1994). One of the steps required to admit the result is testimony from the state toxicologist regarding the simulator solution's chemical composition. 124 Wn.2d at 489. Consequently, suppression of the state toxicologist's testimony necessarily results in suppression of the breath test result evidence. The laboratory is responsible for providing this trial testimony for the entire state of Washington.

17

In this case, five months before trial, the State disclosed the names of nine potential toxicologist witnesses who would testify regarding the simulator solution. Three days before trial, Salgado-Mendoza filed a motion in limine for an order to dismiss the case or to exclude the breath test results on the ground that the laboratory had engaged in mismanagement of human resources. The written motion did not argue that defense counsel could not prepare for trial, but rather stated that preparing to cross-examine eight[15] toxicologists would result "in a tremendous and needless waste of [his] time." Clerk's Papers (CP) at 40. Salgado-Mendoza further acknowledged that he had all of the materials associated with each toxicologist (approximately twenty pages per witness). He argued that each toxicologist "has his or her own background and story that might well provide fodder for cross-examination independent of the others." CP at 41. His motion concluded by stating that the State's mismanagement "*may* force Mr. Salgado in to the Hobson's choice of adequately prepared counsel or a forced waiver of his speedy trial rights." CP at 42 (emphasis added).

At a hearing on this motion, Salgado-Mendoza again explained that late disclosure of the particular witness's identity "unnecessarily increase[d] the workload of the defense counsel in terms of having to prepare for cross-examination." Verbatim Report of Proceedings (VRP) (May 9, 2013) at 21. He told the court that this preparation involved reviewing 160 pages of material. He conceded to the court that the State's narrowing down of the witness list to three names, reduced the amount of paperwork associated with the witnesses to 60 pages. Defense counsel informed the court of a negotiated agreement in King County where the laboratory narrows the

---

[15] In their briefing and arguments before the trial court, the parties consistently refer to "eight" toxicologist's names on the State's witness list. Clerk's Papers at 40. There are, in fact, nine names on the list.

18

list of possible witnesses to three in a timely manner. He then told the court that had the list in this case been narrowed to three names a week prior to trial, he probably would not have brought the motion to dismiss.

The trial court did not take defense counsel's assertions that he could not prepare for trial at face value, noting that defense counsel had handled a thousand DUI cases, both as a prosecutor and a defense attorney. The trial court pressed defense counsel for reasons why the delayed disclosure impaired his ability to prepare and defense counsel struggled to provide them:

> [COURT[16]]: I think that the amount of paperwork you have to go through isn't an extraordinary amount of paperwork. It's only three of the toxicologists. And I don't know what the, what significant differences there are in their paperwork. . . . So maybe you can be a little more specific as to what your concerns are for me?
> [COUNSEL]: [S]o part of it is within their, their charts and graphs.
> . . . .
> [COUNSEL]: [T]he other consideration that we had, or concern that we had is the Court will remember that there was a, uh, huge scandal at the tox lab.

VRP (May 9, 2013) at 22-23.

Defense counsel also mentioned that he wanted "the ability to do the more in depth background check" on the particular witness, based on what he knew about a "scandal" in the laboratory.[17] VRP (May 9, 2013) at 24. The trial court asked defense counsel about this issue, and learned that defense counsel hadn't taken the basic steps to determine if any of the

---

[16] A typographical error in the transcript lists this speaker as "Clerk." It is clear from the context that the speaker is the trial judge.

[17] For two years, ending in 2007, Ann Marie Gordon, a manager for the state's breath testing program, falsely certified that she had prepared and tested DataMaster simulator solutions. *In re Pers. Restraint of Hacheney*, No. 39448-1-II, 2012 WL 2401667, at n.16 (unpublished portion) (Wash. Ct. App. June 26, 2012).

toxicologists on the list had been involved in any impropriety because he did not believe it was his obligation to conduct this research:

> [COURT]: Well, are you saying that these people are part of the cover up?
> [COUNSEL]: I don't know.
> . . . .
> COURT: Well couldn't you have done this previous? He's one of the eight toxicologists. Why would you have to wait until it was narrowed down to three?
> [COUNSEL]: Well, I don't—again, it's, it's a matter of how much work is the State trying to shuffle from their case load to the defense?

VRP (May 9, 2013) at 24-25. At no point during the motion, did counsel say that he was *unable* to be prepared; nor did he explain how the State's actions, rather than his own inaction, prejudiced his client.

Finally, the trial court asked what specific information defense counsel needed, but counsel was unable or unwilling to explain this to the court:

> [COURT]: Was there anything specifically you need to research? You have his documentation there.
> [COUNSEL]: Your Honor, I will do the best I can with what I have. So, I'll just
> . . . .
> [COURT]: Well, I don't know how much preparation you need for . . . Mr. Johnston's testimony.
> [COUNSEL]: And it really is going to depend to a certain extent on how far he goes. If he's just, if he just talks about the simulator solution I'm probably not going to talk to him very much at all. If he gets into other issues beyond the simulator solution then it becomes more problematic for me. . . .
> [COURT]: Oh. Okay. Well, *we'll see where that goes then*.

VRP (May 9, 2013) at 37 (emphasis added).

The prosecutor told the court that it had attempted to contact the laboratory to provide the name of the witness, but was unsuccessful. The prosecutor explained that her conversations with the toxicology personnel revealed that the laboratory had six persons to cover all of the criminal cases prosecuted every day at any point in the state.

20

The trial court denied Salgado-Mendoza's motion. The trial court ruled that there was no mismanagement, given that the laboratory is required to cover the entire state with only limited staff.[18] Additionally the court found that Salgado was not prejudiced, noting that counsel had five months to prepare and that preparing to cross-examine the State's witness was not an extraordinary amount of research to do in the time he had.

At trial, the trial court allowed Salgado-Mendoza to question the toxicologist, Mr. Johnston, outside the presence of the jury regarding the past scandal and problems with the laboratory. Mr. Johnston testified that neither he nor any of the other toxicologists listed as potential witnesses were involved with the prior scandal. The trial court then ruled that Salgado-Mendoza could not introduce evidence of the scandal. Salgado-Mendoza does not appeal this decision. Despite the trial court's previous invitation to explore the matter further, after Mr. Johnston's direct examination, Salgado-Mendoza did not mention whether the witness had testified about matters that he had previously suggested might be "problematic." May 9 VRP at 240. Instead, he proceeded to thoroughly cross-examine Mr. Johnston in a textbook cross-examination of a toxicologist's DUI testimony.

## II. ANALYSIS

The majority holds that the trial court abused its discretion by finding the State did not commit misconduct, and by finding Salgado-Mendoza was not prejudiced by the State's disclosure of the testifying toxicologist on the day of trial. A thorough review of the record

---

[18] There are 39 courts of general jurisdiction and over 150 courts of limited jurisdiction in Washington State. Washington Courts, http://www.courts.wa.gov/court_dir/.

convinces me that the trial court did not abuse its discretion.  I would reverse the superior court's decision and affirm the district court on this issue.

We review a trial court's CrRLJ 8.3(b) ruling for abuse of discretion.  *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997).  A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds.  132 Wn.2d at 240.  Although the majority recites this rule, it does not correctly apply it.  *See* Majority at 7.  In order to hold that the trial court abused its discretion by denying Salgado-Mendoza's motion, we must be convinced that no reasonable person would take the view adopted by the trial court.  *State v. Perez-Cervantes*, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000).

The trial court's decision rested on the correct two-part test—governmental misconduct and prejudice.  *See Michielli*, 132 Wn.2d at 239-40.  Relief under CrRLJ 8.3(b) requires a defendant to show by a preponderance of the evidence arbitrary action or governmental misconduct that prejudiced the defendant's right to a fair trial.  *Michielli*, 132 Wn.2d at 239-40; *State v. Kone*, 165 Wn. App. 420, 432-33, 266 P.3d 916 (2011).

Here, Salgado-Mendoza contends the State committed governmental misconduct by violating discovery rule CrRLJ 4.7 because the name of the specific toxicologist witness was not disclosed until the morning of trial.  The majority agrees, and holds that the prosecutor, by not subpoenaing a particular witness or otherwise seeking relief under CrRLJ 4.7(d), committed misconduct.  But the facts in the record on appeal do not support the majority's holding that the trial court abused its discretion when it found that the State did not commit misconduct and that disclosure of the specific toxicology witness's name on the day of trial did not prejudice

Salgado-Mendoza. Therefore, I would hold that the trial court did not abuse its discretion in denying Salgado-Mendoza's motion for CrRLJ 8.3 relief.

A. *No Governmental Misconduct*

Salgado-Mendoza has the burden of proving by a preponderance of the evidence that the government committed misconduct. *Kone*, 165 Wn. App. at 432-33. The trial court did not abuse its discretion when it ruled that Salgado-Mendoza failed to meet this burden.

Initially, it is important to note that the majority opinion cites to no case where the State was deemed to have committed misconduct when it provided all possible discovery several months prior to trial, such as is the case here. Every case cited by the majority to support its position on this issue involves circumstances where the State acted in a way that surprised the defense with new facts, or failed to provide the defense with substantive facts the State had in its possession. *See State v. Brooks*, 149 Wn. App. 373, 386, 203 P.3d 397 (2009) (the State did not provide any discovery, including names and addresses of witnesses and any witness statements, failed to make the police file available to the defense, and continued to provide stacks of new discovery on the mornings of hearings); *Michielli*, 132 Wn.2d at 243-44 (five days before trial, the State added four new charges); *State v. Dailey*, 93 Wn.2d 454, 459 610 P.2d 357 (1980) (the State did not comply with the omnibus order for over a month after the hearing, and failed to disclose any names and addresses of the State's witnesses until the day before trial). Here, the majority holds that the State has engaged in misconduct not by failing to provide discovery, but in failing to narrow a witness list.

In holding that the State committed misconduct, the majority relies almost entirely on the case of *State v. Blackwell*, 120 Wn.2d 822, 845 P.2d 1017 (1993). But the *Blackwell* court

reversed a trial court's dismissal under CrR 8.3(b), holding that a prosecutor's actions were reasonable based, in part, on the fact that the prosecutor had suggested that the court issue a subpoena duces tecum to obtain requested discovery, which the trial court declined to do. 120 Wn.2d at 832. *Blackwell* does not stand for the proposition that a prosecutor commits misconduct as a matter of law when it does not request a subpoena to obtain information.

Here, as in *Blackwell*, the prosecutor's actions were reasonable. There was "no showing of 'game playing,' mismanagement, or other governmental misconduct on the part of the State that prejudiced the defense." 120 Wn.2d at 832. The prosecutor made the identity of all potential witnesses known to Salgado-Mendoza five months before trial. She made repeated requests for the laboratory to narrow down the list of available witnesses, narrowed the list to three names the day before trial, and provided Salgado-Mendoza with the name of the testifying witness as soon as she was able to obtain it. *Blackwell* does not support the majority's holding that this is misconduct.

Moreover, the majority ignores the practical considerations of serving individual subpoenas on one laboratory that covers multiple courts across the state. The toxicology lab receives approximately 12,000 cases per year and testifies in all 39 Washington counties. The toxicologists are required to be available for multiple trials simultaneously. A criminal trial date is a moving, and sometimes disappearing, target. Cases settle and get continued up to the very last minute. The majority of criminal cases never go to trial. The majority's decision labels the state toxicologist's hiring decisions "mismanagement" because they do not provide for enough toxicologists to individually cover each criminal trial set in the state. I cannot agree with this holding.

B.    *No Prejudice*

Salgado-Mendoza has the additional burden of proving prejudice. The trial court did not abuse its discretion when it ruled that he failed to meet this burden.

It is true that the government's failure to act with due diligence may prejudice either the defendant's right to a speedy trial or his right to be represented by counsel who has had sufficient opportunity to adequately prepare. *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980). However, under *Price* and its progeny, *State v. Woods*, the defendant must prove by a preponderance of the evidence that the State's delay interjected "new facts" into the case which forced the defendant to choose between two constitutional rights.[19] *Woods*, 143 Wn.2d 561, 583-84, 23 P.3d 1046 (2001); *Price*, 94 Wn.2d at 814; *see also Michielli*, 132 Wn.2d at 244-45  The majority rejects this standard, holding instead that a defendant's simple assertion that he feels forced to choose between his right to speedy trial and going to trial unprepared, without more, is sufficient to prove prejudice.

Even assuming Salgado-Mendoza is not required to prove that the State interjected new facts, he still cannot prove he was actually prejudiced by the late disclosure of the specific toxicologist. The majority's decision holding Salgado-Mendoza was prejudiced as a matter of law is based on defense counsel's bald assertion that he would have preferred to request a continuance, but that Salgado-Mendoza did not want to forgo his speedy trial rights. The trial court did not accept the statement, nor should we without an adequate showing that the delayed disclosure actually prevented counsel from preparing for trial. Defense counsel's assertion is

---

[19] In *Woods*, the defendant moved to dismiss the charges as a result of the State's delayed production of the results of forensic testing. *Wood*, 143 Wn.2d at 582-83.

insufficient to prove prejudice as a matter of law. The trial court was entitled to explore and reject this assertion, which it did, and the trial court did not abuse its discretion by denying Salgado-Mendoza's motion. *See State v. Bradfield*, 29 Wn. App. 679, 682, 630 P.2d 494 (1981) ("Absent some showing of actual prejudice, we will not interfere with the trial court's exercise of discretion in denying sanctions pursuant to CrR 4.7(h)(7)(i).").

Additionally, Salgado-Mendoza argues, and the majority agrees, that asking counsel to prepare for trial by investigating nine potential toxicology witnesses placed an "unfair burden" on, and therefore prejudiced, the defense. Br. of Resp't at 11 n 3; Majority 13. By reaching this conclusion, the majority substitutes its judgment for that of the trial court. Therefore, I disagree.

Defense counsel told the trial court that he was in the possession of discovery consisting of twenty pages of records for each toxicologist. The trial court ruled that this was not an unreasonable amount of discovery to review over the course of five months, especially in light of defense counsel's experience. The trial court did not abuse its discretion in making this ruling.

The trial court considered the issue of prejudice when ruling on Salgado-Mendoza's motion. The court pressed defense counsel for reasons why the delayed disclosure impaired his ability to prepare and defense counsel struggled to provide them. The trial court's ruling that counsel could adequately prepare for cross-examination of a toxicologist, given his experience and the fact that he had the names and records of the potential witnesses five months before trial is not manifestly unreasonable or based on untenable grounds. The reasonableness of the trial court's decision is further illustrated by the fact that after the trial court suggested that Salgado-Mendoza bring any specific issues regarding his inability to prepare for the toxicologist's

proffered testimony to the trial court's attention, he failed to do so, indicating that he did not need additional time to prepare for cross-examination.

It is clear from reading the record that counsel was not *unable* to prepare—he was just *unwilling* to prepare for cross-examination. He did not explain to the court how the toxicologists differed from one another. Nor did he explain what additional preparation he needed. The trial court considered whether the delayed disclosure prejudiced Salgado-Mendoza and concluded it did not. Salgado-Mendoza must prove he suffered actual prejudice from the State's delay. He has failed to meet this burden. I disagree with the majority and hold that the trial court's denial of Salgado-Mendoza's CrRLJ 8.3(b) motion was not an abuse of discretion.

C.      *No Clear Direction*

Although the majority engages in a hypothetical *Hutchinson*[20] analysis to suggest that the trial court should have suppressed the evidence in this case, the majority gives no clear direction to the trial court on remand or to future criminal trials.[21] The majority merely instructs the State to "ensure that it provides the name and address of the person or persons it intends to call at trial or comply with CrR 4.7(d) when preparing for the new trial." Majority at 16. The majority mentions the lack of resources at the toxicology lab, and justifies their ruling by explaining "without our ability to impose sanctions, the State would have no incentive to remedy the problem to the extent it is caused by lack of resources being allocated to the toxicology lab." Majority at 12. But the remand instruction is too imprecise to provide this incentive.

---

[20] *State v. Hutchinson*, 135 Wn.2d 863, 882-83, 959 P.2d 1061 (1998).

[21] The majority properly notes that this dispute will be remanded for a new trial regardless of our holding and that the decision to impose sanctions is a fact-specific determination that must be resolved on a case-by-case basis.

No. 46062-9-II

The majority's instruction to the court on remand sets no standard for when toxicology witnesses need to be disclosed. Rather, it merely implies that the prosecutor should request a subpoena when she cannot otherwise produce the name of the toxicology witness. How many days before trial must this disclosure be made? Must the State disclose only one name despite defense counsel's assertion that narrowing the list down to three names would have been sufficient? Henceforth, will toxicologist testimony, and thus, every breath test in this division, be suppressed where the State toxicology laboratory cannot produce the name of one specific simulator solution witness by some unspecified deadline? How many new employees must the state toxicologist hire, so that they can stand by the ready for trials that may be settled or continued? Without a showing of misconduct, prejudice, or need, the majority decision throws every DUI prosecution in this court's division into chaos.

III. CONCLUSION

In conclusion, I am not convinced that no reasonable person would take the view adopted by the trial court when it ruled that the State did not commit misconduct, and that the State's actions were not prejudicial. Thus I would hold that the trial court did not abuse its discretion in refusing to suppress the toxicologist's testimony. I would reverse the superior court and affirm the trial court on this issue.

_____
Worswick, J.

28